# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### No. 02-10V
Filed: February 4, 2016

| | |
|---|---|
| * * * * * * * * * * * * * * * | **PUBLISHED** |
| JOANN MOSTOVOY and VADIM | |
| MOSTOVOY, in their own right and as | Chief Special Master Dorsey |
| best friends of their son, V.J.M. | |
| | Interim Attorneys' Fees & Costs; |
| | Appropriate Hourly Rates; Vague, |
| Petitioners, | Excessive, and Block Billing; |
| v. | Failure to Sufficiently Document |
| | Costs; Attorneys' Fees Requested for |
| SECRETARY OF HEALTH | Fundraising, Travel and |
| AND HUMAN SERVICES, | Administrative Duties. |
| | |
| Respondent. | |
| * * * * * * * * * * * * * * * | |

John F. McHugh, Law Office of John McHugh, New York, NY, for petitioners.
Ann D. Martin, U.S. Department of Justice, Washington, DC, for respondent.

## DECISION ON AWARD OF INTERIM ATTORNEYS' FEES AND COSTS[1]

On January 4, 2002, Joann Mostovoy and Vadim Mostovoy ("petitioners") filed a petition for compensation under the National Vaccine Injury Compensation Program[2] ("the Program"), as the legal representatives of their son, V.J.M., in which they allege that the measles, mumps and rubella ("MMR") vaccination V.J.M. received in January 1999 caused him to develop autism or autism spectrum disorder ("ASD"). Since the original filing of petitioners' petition, twenty other petitioners, all with similar factual allegations, have joined the Mostovoy

---

[1] Because this decision contains a reasoned explanation for the undersigned's action in this case, the undersigned intends to post this ruling on the website of the United States Court of Federal Claims, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2012)). As provided by Vaccine Rule 18(b), each party has 14 days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b).

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-1 to -34 (2012) ("Vaccine Act" or "the Act"). All citations in this decision to individual sections of the Vaccine Act are to 42 U.S.C. § 300aa.

petitioners in an omnibus proceeding.[3]  See Order dated April 15, 2003, (ECF No. 25).  A hearing is scheduled to take place in March 2016.  Order dated January 6, 2016, (ECF No. 200).

On December 8, 2015, petitioners filed an Interim Application for Fees and Expenses.  See Petitioners' Motion for Attorney [sic] Fees dated December 8, 2015, (ECF Nos. 182-187) ("Pet'rs' Motion").[4]  Petitioner requested an award of $465,060.00 in attorneys' fees for work completed between the years 2001-2014, and $90,627.00 in costs incurred between the years 2001-2014.  Id. at 2.[5]  Respondent filed her response to petitioners' motion for interim fees and costs on December 23, 2015.  See Response to Petitioners' Interim Application for Fees and Costs dated December 23, 2015, (ECF No. 195) ("Resp's Response").  Respondent has raised several general objections to certain aspects of petitioners' application for interim fees.

For the reasons set forth below, the undersigned awards petitioners $305,492.75 for interim fees and $12,326.56 in reimbursement for interim costs, for a total award of $318,269.31.

## I.    Procedural History

### a.  Petitioners' Application for Interim Fees and Costs

Petitioners seek interim fees and costs at this juncture because "[they] need funds to finance preparation for the hearing scheduled for March."  Pet'rs' Motion at 1.  Petitioners urge that "timing is becoming critical" and that "significant sums must be expended" in order for petitioners to participate in the hearing scheduled for March 7-11, 2016."  Id.  In furtherance of their motion, petitioners argue that their counsel, Mr. John McHugh, should be compensated at a

---

[3] This Decision awards interim attorneys' fees and costs for work performed by petitioners' counsel, Mr. John McHugh, in this case and the Mostovoy omnibus proceeding.  The following cases are included in the omnibus proceeding:

| | |
|---|---|
| (1) Mostovoy (02-010v) | (12) Rettig (09-143v) |
| (2) Fuesel (02-095v) | (13) Hippensteel (09-206v) |
| (3) Small (02-1616v) | (14) Williams (14-375v) |
| (4) Hernandez-Rios (03-1156v) | (15) Penzi (07-750v) |
| (5) Coiro-Lorusso (04-258v) | (16) Osborne (08-125v) |
| (6) Young (05-207v) | (17) Graddy (08-416v) |
| (7) Bielawa (05-1168v) | (18) Eworonsky (04-992v) |
| (8) Bielawa (08-131v) | (19) King (05-717v) |
| (9) Doskcz (08-254v) | (20) Robins (10-096v) |
| (10) Doskcz (08-253v) | (21) Torres (15-561v) |
| (11) Palace (08-388v) | |

[4] The undersigned notes the confusion petitioners' counsel caused when filing this motion on CM/ECF.  Petitioners' counsel filed eight separate motions for interim attorneys' fees that were incorrectly labeled "Motion for Attorneys' Fees."  Seven of these eight filings were incorrectly labeled as "motions" rather than as exhibits.  In an effort to make the docket text as clear as possible, the Clerk's Office correctly re-labeled all six documents.

[5] This decision refers to CM/ECF-labeled document and page numbers, as petitioners' counsel failed to provide accurate exhibit and page numbers.

rate of $400.00 per hour. Petitioners cite to Special Master Gowan's decision in McCulloch to support their argument that Mr. McHugh should receive this hourly rate.[6] Petitioners contend that "a reasonable fee lies between the $400 and the 415 [sic] awarded in McCulloch [sic] for work done in 2014." Pet'rs' Motion at 5. Petitioners compare Mr. McHugh's solo firm, located in New York, New York, to the Boston law firm at issue in McCulloch to conclude that such a rate is reasonable. Id.

Petitioners next discuss the number of billable hours that their counsel has expended and the amount of time spent searching for and working with expert witnesses. Pet'rs' Motion at 6. Petitioners note that "[f]inding experts willing to take the professional risk to participate [in the lawsuit] has been a multi-year problem, which remains unresolved." Id. Petitioners further report that they have "insisted" that their expert seek peer reviewed publication of the research performed thus far. As a result, petitioners assert that they "have paid significant amounts to the expert to finance work she could not otherwise do." Id. at 7. Petitioners conclude by stating that all requested interim fees and costs are reasonable, as petitioners' counsel has traveled across the country on several occasions to meet with petitioners' expert and he has spent many hours in an effort to "fully understand the science in issue." Id. at 7.

### b. Respondent's Response to Petitioners' Motion for Interim Fees and Costs

Respondent argues that an award of interim fees is not appropriate as a matter of law because petitioners have not shown that any of the Avera factors meriting an award of interim attorney's fees apply in this case[7] and have not given any legal analysis as to why fees and costs are appropriate at this juncture. Resp's Response at 2, 5. With respect to Avera, respondent argues that petitioners' case has been "protracted" because of their own numerous requests for extension of time. Id. at 3. Respondent also contends that petitioners have not shown that an undue hardship would result if an interim award is not granted. Id. Respondent contends that all Vaccine Act cases that proceed toward an entitlement hearing involve expert witnesses and that "[s]imply because petitioners have filed an expert report in this case and anticipate calling additional experts does not presumptively warrant an interim award." Id. at 3. Respondent cites the Court of Federal Claims' order in McKellar v. Sec'y of Health & Human Servs., 101 Fed. Cl. 297, 300 (2011), that "interim fee awards should be the rare exception, not the rule." Id. at 2. Respondent contends that for the undersigned to award petitioners interim fees in this case would amount to interim fees and costs awards becoming "the norm" in all cases in which a hearing has been scheduled. Id.

Ultimately, however, respondent "defers to the Chief Special Master's statutory discretion in determining a reasonable interim fees and costs award for this case.[8] However,

---

[6] McCulloch v. Sec'y of Health & Human Servs., No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). McCulloch concerns appropriate hourly rates for attorneys, paralegals, and law clerks at a Boston law firm. The undersigned adopted the McCulloch analysis in several of her previous decisions awarding fees and costs to the Boston law firm.

[7] See Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343 (Fed. Cir. 2008) (noting that there are several factors relevant to the determination of an award for interim fees and costs, including whether the case involves protracted proceedings, whether petitioner has retained costly experts, and whether petitioner has suffered undue hardship).

[8] See § 15(e)(1)

respondent argues that "an interim request for $465,060.00 in attorneys' fees and $90,627.00 in costs, with expert reports filed from only two experts for petitioners, and before this case has even gone to hearing, is patently absurd, not to mention completely unreasonable." Resp's Response at 5.

### c. Petitioners' Reply to Respondent's Response to Petitioners' Motion for Interim Fees and Costs

Petitioners' reply does not respond to respondent's arguments, except to say that Avera applies because the case involves protracted proceedings and that a hardship exists given that "costly experts have been retained." Pet'rs' Reply dated December 28, 2015, (ECF No. 196) ("Pet'rs' Reply") at 1. Additionally, petitioners correctly note that respondent has failed to object to particular items of petitioners' application. Id. at 5. This matter is now briefed and ripe for decision.

## II.    Discussion

Petitioners are eligible for an interim award of reasonable attorneys' fees and costs if the undersigned finds that they brought their petition in good faith and with a reasonable basis. § 15(e)(1); Avera, 515 F.3d at 1352; Shaw v. Sec'y of Health & Human Servs., 609 F.3d 1372 (Fed. Cir. 2010); Woods v.Sec'y of Health & Human Servs., 105 Fed. Cl. 148, 154 (Fed. Cl. 2012); Friedman v. Sec'y of Health & Human Servs., 94 Fed. Cl. 323, 334 (Fed. Cl. 2010); Doe 21 v. Sec'y of Health & Human Servs., 89 Fed. Cl. 661, 668 (Fed. Cl. 2009); Bear v. Sec'y of Health & Human Servs., No. 11-362v, 2013 WL 691963, at *5 (Fed. Cl. Spec. Mstr. Feb. 4, 2013); Lumsden v. Sec'y of Health & Human Servs., No. 97-588, 2012 WL 1450520, at *6 (Fed. Cl. Spec. Mstr. Mar. 28, 2012). A petitioner "bears the burden of establishing the hours expended." Wasson v. Sec'y of Health & Human Servs., 24 Cl. Ct. 482, 484 (1991) (affirming special master's reduction of fee applicant's hours due to inadequate recordkeeping), aff'd after remand, 988 F.2d 131 (Fed. Cir. 1993) (per curiam). Reasonable attorneys' fees are determined by "'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" Avera, 515 F.3d at 1347-48 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)). Special masters have "wide discretion in determining the reasonableness" of attorneys' fees and costs, Perreira v. Sec'y of Health & Human Servs., 27 Fed. Cl. 29, 34 (1992), aff'd, 33 F.3d 1375 (Fed. Cir. 1994), and may increase or reduce the initial fee award calculation based on specific findings. Avera, 515 F.3d at 1348.

In making reductions, a line-by-line evaluation of the fee application is not required. Wasson, 24 Cl. Ct. at 484, rev'd on other grounds and aff'd in relevant part, 988 F.2d 131 (Fed. Cir. 1993). Special masters may rely on their experience with the Vaccine Act and its attorneys to determine the reasonable number of hours expended. Id. Just as "[t]rial courts routinely use their prior experience to reduce hourly rates and the number of hours claimed in attorney fee requests . . . [v]accine program special masters are also entitled to use their prior experience in reviewing fee applications." Saxton v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993).

In Avera, the Federal Circuit stated, "Interim fees are particularly appropriate in cases where proceedings are protracted and costly experts must be retained." 515 F.3d at 1352. In Shaw, the Federal Circuit held that "where the claimant establishes that the cost of litigation has

imposed an undue hardship and there exists a good faith basis for the claim, it is proper for the special master to award interim attorneys' fees."  609 F.3d at 1375.

Given that this case has been ongoing since January 2002 and petitioners have now retained and filed reports from three expert witness, the undersigned finds that an award of interim fees and costs is reasonable.

### a.  Reasonable Attorneys' Fees

#### i.  Hourly Rates

Petitioners request compensation for Mr. McHugh in the amount of $290.00 per hour in 2001, $295.00 in 2002, $300.00 per hour in 2003, $315.00 per hour in 2006, $320.00 per hour in 2007, $325.00 per hour in 2008, $330.00 per hour in 2009, $340.00 per hour in 2011, $345.00 per hour in 2012, $350.00 per hour in 2013, and $355.00 per hour in 2014.[9]  Petitioners appear to seek compensation for Mr. McHugh in the amount of $400.00 per hour, citing McCulloch to argue that this is an appropriate forum rate for a practitioner in New York, New York.  However, petitioners do not specify in which year or years Mr. McHugh's hourly rates should be increased, and despite their argument that Mr. McHugh is entitled to a higher hourly rate, petitioners' fee application is based on Mr. McHugh's old forum rates.

Other special masters have awarded similar rates to Mr. McHugh.  In Rodriguez v. Sec'y of Health & Human Servs., 2009 WL 2568468 (Fed. Cl. Spec. Mstr. July 27, 2009), Special Master Vowell awarded Mr. McHugh $310.00 per hour for work performed in 2006, $320.00 per hour for work performed in 2007, $330.00 per hour for work performed in 2008, and $335.00 per hour for work he performed in 2009.  Id. at *23.  In Hirmiz v. Sec'y of Health & Human Servs., 2011 WL 2680721 (Fed. Cl. Spec. Mstr. June 13, 2011), Special Master Hastings awarded Mr. McHugh $350.00 per hour, noting that "[t]he parties are in agreement that a reasonable hourly rate for purposes of the interim award is $350.00."  Id. at *8.

The undersigned thus finds that Mr. McHugh is entitled to hourly rates of $290.00 in 2001, $295.00 in 2002, $300.00 in 2003, $315.00 in 2006, $320.00 in 2007, $325.00 in 2008, $330.00 in 2009, $340.00 in 2011, $345.00 in 2012, $350.00 in 2013, and $400.00 in 2014.[10] The undersigned finds these amounts reasonable in light of other decisions awarding Mr. McHugh similar hourly rates.

#### ii.  Reduction of Billable Hours

While petitioners are entitled to an award of interim attorneys' fees, the undersigned finds that a reduction in the number of hours billed by Mr. McHugh is appropriate for four basic reasons.  First, petitioners' counsel requests compensation for multiple hours of administrative work, including filing documents on CM/ECF, mailing letters, and scheduling phone calls.

---

[9] The undersigned awards attorneys' fees in this case by calculating the total number of hours paid by the appropriate yearly rate.

[10] Because petitioners' application was based on an hourly rate of $355.00 in 2014, the undersigned recalculated petitioners' application for that year using the newly awarded rate.

Second, petitioners' counsel's time sheets are extremely vague and in some instances constitute block billing. Additionally, petitioners' counsel has failed to adequately explain how some of his billable hours are relevant. Third, petitioners' counsel billed time for multiple hours spent fundraising. Many of these entries for fundraising are so vague that the undersigned cannot understand their purpose. Finally, petitioners' counsel requests compensation at his full hourly rate of pay for time spent traveling to and from meetings with co-counsel and expert witnesses. For all of these reasons, each explained in further detail below, the undersigned reduces the number of billable hours for which petitioners' counsel is entitled to compensation.

### 1.   Administrative Work

Mr. McHugh billed 18.38 hours between 2001 - 2014 for performing administrative tasks such as reviewing invoices, setting up meetings, and making travel arrangements. It is well established that billing for clerical and other secretarial work is not permitted in the Vaccine Program. Rochester v. United States, 18 Cl. Ct. 379, 387 (1989) (denying an award of fees for time billed by a secretary and finding that "[these] services . . . should be considered as normal overhead office costs included within the attorneys' fee rates"). Therefore, the undersigned will not compensate Mr. McHugh for the 18.38 hours he spent performing clerical and secretarial work.

Additionally, Mr. McHugh billed 71 hours for performing administrative tasks such as filing orders, preparing and filing exhibits and exhibit lists, and assembling trial notebooks. Attorneys may be compensated for non-attorney level work, but usually at a rate that is comparable to what would be paid for a paralegal or secretary. Doe 11 v. Sec'y of Health & Human Servs., No. XX-XXXV, 2010 WL 529425, at *9-10 (Fed. Cl. Spec. Mstr. Jan. 29, 2010) (clarifying "that it is the nature of the work, not the title or education of the person performing it, that determines whether it is legal, paralegal, or secretarial/clerical in nature" citing Missouri v. Jenkins, 491 U.S. 274, 288 (1989)); Riggins v. Sec'y of Health & Human Servs., No. 99-382V, 2009 WL 3319818, at *21 Fed. Cl. Spec. Mstr. June 15, 2009), aff'd 406 F. App'x 479 (Fed. Cir. 2011).

Moreover, the undersigned will only compensate Mr. McHugh for half of the time billed for performing paralegal work, as the time it took Mr. McHugh to perform some of these tasks suggests that a paralegal could have performed them more efficiently. For example, on December 16, 2011, Mr. McHugh spent four hours and 48 minutes editing and filing Dr. Deisher's expert report on CD. On August 21, 2014, he spent three hours and 30 minutes comparing Dr. Deisher's reference list to documents previously filed in order to correct errors and search for missing documents. However, no additional documents were filed until February 9, 2015, when Mr. McHugh filed one article. See Exhibit 265. The undersigned will thus compensate Mr. McHugh at the paralegal rate of $100.00 per hour for one-half of the 71 hours he spent performing these organizational tasks.

### 2.   Vague, Excessive, Irrelevant, and Block Billing

In addition to reducing petitioners' fee award for the time their counsel billed for administrative tasks, the undersigned also finds that petitioners' award should be reduced for vague, excessive, and occasionally irrelevant billing, as well as block billing. Of the 1353.40 total hours billed by Mr. McHugh, the billing entries for over 330 of these hours are vague and lack detail as to the actual tasks performed. For example, on April 1, 2012, Mr. McHugh billed

1.5 hours of time, which is documented simply as "email." No detail or explanation is given regarding to whom the email was sent or what the email concerned, and petitioners have not provided additional information explaining why these and other similar billing entries are otherwise reasonable or necessary.

Many of Mr. McHugh's billing entries appear excessive, as there are numerous entries for time spent on the same tasks. For example, on October 25, 2011, Mr. McHugh billed three hours and ten minutes to "review articles as received from library." On November 1, 2011, there were three separate entries for researching and reviewing articles for Dr. Deisher's expert report.[11] Taken as a whole, the undersigned finds these types of entries excessive and will not compensate Mr. McHugh for all of them.

Mr. McHugh also billed several hours of time for research that appears irrelevant to petitioners' medical theory, including "grand rounds" at a hospital in Portland, Oregon, and researching Dr. Deisher's patent applications.[12] In addition, time billed by Mr. McHugh for completing tasks such as drafting briefs and replies to motions appears excessive. For example, on April 6, 2012, Mr. McHugh billed 30 minutes of time for "drafting," but fails to state on which motion or report he is working. Again on April 9, 2012, Mr. McHugh billed nine hours of time for "motion reply," and he billed nine hours and 48 minutes on April 10, 2012, for "motion." These entries are vague and constituting block billing, and the undersigned finds them to be unreasonable.

It is well established that an application for fees and costs must sufficiently detail and explain the time billed so that a special master may determine, from the application and the case file, whether the amount requested is reasonable. Bell v. Sec'y of Health & Human Servs., 18 Cl. Ct. 751, 760 (1989); Rodriguez, 2009 WL 2568468. Petitioner bears the burden of documenting the fees and costs claimed. Id. at *8. Block billing, or billing large amounts of time without sufficient detail as to what tasks were performed, is clearly disfavored. Broekelschen v. Sec'y of Health & Human Servs., 2008 U.S. Claims LEXIS 399, at **13-14 (Fed. Cl. Spec. Mstr. Dec. 17, 2008) (reducing petitioner's attorneys' fees and criticizing her for block billing); see also Jeffries v. Sec'y of Health & Human Servs., 2006 U.S. Claims LEXIS 411, at *8 (Fed Cl. Spec. Mstr. Dec. 15, 2006); Plott v. Sec'y of Health & Human Servs., 1997 U.S. Claims LEXIS 313, at *5 (Fed. Cl. Spec. Mstr. April 23, 1997). Indeed, the Vaccine Program's Guidelines for Practice state, "Each task should have its own line entry indicating the amount of time spent on that task. Several tasks lumped together with one time entry frustrates the court's ability to assess the reasonableness of the request."[13]

---

[11] See November 1, 2011 ("[r]eviewing articles cited by Dr. Deisher"); November 1, 2011 ("[r]eview articles for Deisher report"); November 1, 2011 ("[r]esearch on supporting literature").

[12] See, e.g., petitioners' billing entries on November 12, 2013 ("review patents"); November 12, 2013 ("T/C Mike re: Dr. Deisher's patents and status"); December 9, 2013 ("[p]repare for grand rounds"); and December 11, 2013 ("[g]rand rounds").

[13] Guidelines for Practice Under the National Vaccine Injury Compensation Program ("Guidelines for Practice") at 68 (revised January 7, 2016) found at http://www.uscfc.uscourts.gov/sites/default/files/GUIDELINES-FOR-PRACTICE-1-7-16.pdf (last visited on February 1, 2016) (Section X, Chapter 3, Part B(1)(b)).

Therefore, the undersigned will not compensate Mr. McHugh for the 347.65 hours for which the billing entries are vague, the time expended is excessive, the task appears irrelevant to petitioners' medical theory, and/or the billing entry constitutes block billing.

### 3. Fundraising

The undersigned will also reduce Mr. McHugh's fees by the number of hours that he spent fundraising. Petitioners' application reflects that Mr. McHugh billed 24 hours of time to help raise money. For example, on February 29, 2012, Mr. McHugh billed 2.5 hours for "[m]emo on strategy for raising funds." Two days later, on March 1, 2012, Mr. McHugh billed 1.6 hours for "[m]emo to bar re: theory and seeking assistance." There is no explanation given for why these activities are relevant. Moreover, fundraising activities bear little relevance to petitioners' medical theory of causation, and thus the undersigned will not compensate Mr. McHugh for them. Even assuming, *arguendo*, these activities were relevant to petitioners' medical theory, petitioners have not explained why it was necessary for Mr. McHugh to perform fundraising work.

### 4. Compensation for Travel

Despite having been previously warned that he could only bill at half of his normal hourly rate for time expended on travel,[14] petitioners request that Mr. McHugh receive his full rate of pay for the time spent traveling to and from New York, Washington, D.C., Seattle, and Portland. Because Mr. McHugh reviewed medical literature and worked on a motion to compel during the time that he took Amtrak to Washington, D.C., the undersigned finds it reasonable to compensate Mr. McHugh at his full rate of pay for this time.[15] However, petitioners' application does not reflect that Mr. McHugh performed work on any of his other business trips, and it is well established that billing at half the forum rate is reasonable when the attorney is not performing work while traveling. See Rodriguez, 2009 WL 2568468, at *21; Carter v. Sec'y of Health & Human Servs., 2007 U.S. Claims LEXIS 249 (Fed. Cl. Spec. Mstr. July 13, 2007); Scoutto v. Sec'y of Health & Human Servs., 1997 U.S. Claims LEXIS 195 (Fed. Cl. Spec. Mstr. Sept. 5, 1997). Therefore, the undersigned will compensate Mr. McHugh at the full rate for his January 20-21, 2012 business trip to Washington, D.C. But Mr. McHugh will receive half of his normal rate of pay for his other business trips, as the record reflects that he did not perform work during his travel time.

---

[14] Mr. McHugh has previously been put on notice that he would not be compensated at his full hourly rate for time spent traveling. For example, in reducing Mr. McHugh's billable travel time by half, Special Master Vowell reasoned, "[a]lthough Mr. McHugh may have been thinking about the hearing during his travel, he was not working during the four hours of his round-trip travel between New York and Philadelphia. I thus conclude that it is more reasonable to follow the usual Vaccine Act practice and reimburse him at half the forum rate for the time expended on travel." Rodriguez, 2009 WL 2568468, at *21.

[15] See Pet'r's App., January 21, 2012 ("[t]ravel to DC, Amtrak, review literature prep"); January 22, 2012 ("[t]ravel back to NY, work on motion to compel").

### iii.   Yearly Breakdown of Deductions[16]

#### 1.   2001

In 2001, Mr. McHugh billed a total of 15.9 hours, including reviewing petitioners' documents, drafting the petition and its exhibits, and collecting the relevant medical records. The undersigned finds all of this time reasonable and will compensate Mr. McHugh for 15.9 hours of time at his requested billing rate of $290.00 per hour.  The undersigned thus awards Mr. McHugh $4,611.00 for work performed in 2001.

#### 2.   2002

In 2002, Mr. McHugh billed a total of 69.07 hours, including time spent researching autism, participating in conference calls, and reviewing medical records and other documents. However, the undersigned will not award Mr. McHugh his full attorney rate for the 2.5 hours of administrative work performed on October 29, 2002, ("[n]otice of filing and review all medical documents, file") and November 26, 2002 ("[r]esubmit documents").  Instead the undersigned will compensate Mr. McHugh for one-half of this time at a paralegal rate.  The undersigned compensates Mr. McHugh for 66.57 billable hours at his requested billing rate of $295.00 per hour and 1.25 hours at a rate of $100.00 per hour, thus awarding him $19,763.15 for work performed in 2002.

#### 3.   2003

In 2003, Mr. McHugh billed a total of four and a half hours, during which he worked on a supplemental expert report, attended conference calls, and filed a "notice to continue."  The undersigned finds that Mr. McHugh should be compensated for four and a half hours of work at his requested rate of $300.00 per hour and thus awards Mr. McHugh $1,350.00 for work performed in 2003.

#### 4.   2006

After 2003, Mr. McHugh did not bill time for work performed on this case again until 2006, during which he billed a total of half an hour to report to his client.  The undersigned finds that Mr. McHugh should be compensated for this half hour of work at his requested rate of $315.00 per hour and thus awards him $157.50 for work performed in 2006.

#### 5.   2007

In 2007, Mr. McHugh billed a total of half an hour for telephone calls with his client and a potential expert witness.  The undersigned finds that Mr. McHugh should be compensated for this time at his requested rate of $320.00 per hour and thus awards him $160.00 for work performed in 2007.

---

[16] The undersigned attaches petitioners' chart of billable hours consolidated as one document as Appendix A to this Order for ease of reference, as petitioners filed the chart as three separate entries on CM/ECF.  All specific date entries given in this decision are taken from the chart attached as Appendix A.  The undersigned also files as Appendix B a spreadsheet of petitioners' fee award.

### 6.  2008

In 2008, Mr. McHugh billed a total of four hours for preparing a reply for an order and for telephone calls with his client and a potential expert witness.  The undersigned will compensate Mr. McHugh for these four hours at his requested rate of $325.00, thus awarding him $1,300.00 for work performed in 2008.

### 7.  2009

For 2009, petitioners request compensation for two billable hours to gather the remainder of the medical records as well as draft and edit a "statement of compliance."  The undersigned finds that Mr. McHugh should be compensated for these two hours at his requested rate of $330.00 per hour.  The undersigned thus awards Mr. McHugh $660.00 for work performed in 2009.

### 8.  2011

After 2009, Mr. McHugh did not bill any additional time on this case until 2011, for which he requests compensation for 191.87 billable hours.  The undersigned will compensate him for 140.23 hours of work at his attorney rate and 2.4 hours of work at the paralegal rate and deducts 4.98 hours for administrative work and 44.26 hours for vague, excessive, and block billing.

On December 15, 2011, Mr. McHugh billed two hours and 35 minutes for "prepar[ing] report for CD."  He billed four hours and 48 minutes on December 16, 2011, to "[e]dit and [f]ile Deisher report on CD."  The undersigned will not compensate Mr. McHugh for the administrative task of putting documents on a CD but will compensate him at a paralegal rate for one-half of the time billed to edit and file Dr. Deisher's expert report.  Thus, the undersigned reduces Mr. McHugh's fee award by a total of 4.98 hours and compensates him at a rate of $100.00 per hour for 2.4 hours.

The undersigned also reduces 44.26 of Mr. McHugh's billable hours for vague, excessive, irrelevant, and block billing.  On August 25, 2011, Mr. McHugh billed two hours of time for "[r]eceiv[ing] and review[ing] documents in support."  Mr. McHugh does not state what documents he is reviewing or why he is reviewing them and thus will not be compensated for this time.

On November 3, 2011, Mr. McHugh billed 2.6 hours and described his work performed as "[s]ummerize [sic] Minisota [sic] Testimony."  This description is vague and unclear at best and does not appear relevant to petitioners' medical theory, and the undersigned will not compensate Mr. McHugh for this time.

On November 7, 2011, Mr. McHugh billed one hour and 48 minutes for "[a]mended petition," but the amended petition was filed on June 6, 2011, nearly five months earlier. The undersigned will thus not compensate Mr. McHugh for this time.

On November 18, 2011, Mr. McHugh billed three hours and 35 minutes for "[e]dit of statement refer to Minnesota testimony," and on November 28, 2011, he billed three hours and 42 minutes for "[e]dit statement, refer to Minn [sic] testimony list?"  These descriptions are

10

vague, unclear, and appear to be irrelevant to petitioners' medical theory.  Petitioners have failed to explain why these entries are relevant and/or reasonable, and thus the undersigned will not compensate Mr. McHugh for this time.

On December 15, 2011, Mr. McHugh billed eight hours and 12 minutes of time for "Deisher reports, exhibits, and cross check citations."  This entry is unclear, excessive, and constitutes block billing.  Mr. McHugh will not be compensated for this time.

The undersigned also reduces Mr. McHugh's fees by one half on the following 2011 dates: October 10 ("[c]ontinue research on Deisher report, e-mail ?'s"); October 12 ("[E]t al, edit Deisher report, exhibits"); October 22 ("Deisher declaration edit, review supports"); October 25 ("Deisher receive 1, 2, 4, 5, 7 literature, review"); October 25 ("review articles as received from library"); October 26 ("status report"); November 1 ("[r]eviewing articles cited by Deisher"); November 1 ("[r]eview articles for Deisher report"); November 1 ("[r]esearch on supporting literature"); November 2 ("[r]esearch on supporting literature, annotate"); November 2 ("[r]esearch re: Deisher statement, review"); November 4 ("[r]eview medical literature"); November 7 ("[r]eceive and review additional articles"); November 7 ("[a]nalysis of Deisher study and exhibits"); November 8 ("[c]ontinue research, checking footnote references"); and November 8 ("Deisher review articles and references").  The undersigned finds these billings, which total 44.66 hours, will be reduced by 50 percent because they are vague and excessive, and several of the entries constitute block billing.

The undersigned reduces Mr. McHugh's total billable hours for 2011 by 49.24 hours and will compensate him for 140.23 hours at his requested rate of $340.00 per hour and 2.4 hours at $100.00 per hour.  The undersigned thus awards Mr. McHugh $47,918.20 for work performed in 2011.

### 9.   2012

In 2012, petitioners request compensation for 427.39 billable hours of work performed by Mr. McHugh.  The undersigned will compensate Mr. McHugh for 289.02 hours of work at his attorney rate and 3.15 hours of work at a paralegal rate and deducts 4.35 hour of secretarial time, 100.89 hours of irrelevant, excessive, and/or block billing, 20.1 hours spent fundraising, and 9.88 hours of travel time.

On January 21, 2012, Mr. McHugh billed 12 minutes to "[s]et up meeting [with] Dr. Deisher" and on May 11, 2012, half an hour was billed to schedule a meeting with "VIP."  On March 6, 2012, Mr. McHugh billed six minutes for sending a CD to a potential expert witness, and on September 24, 2012, he billed six minutes for sending his motion to compel to Dr. Deisher.  On March 20, 2012, Mr. McHugh billed 12 minutes for scheduling a conference call with Dr. Deisher.  On November 6, 2012, he billed another six minutes to approve Dr. Deisher's travel cost.  These tasks are secretarial in nature and will not be compensated.

Mr. McHugh billed a total of 6.3 hours for administrative tasks which constitute non-attorney work.  On March 6, 2012, he billed six minutes to file a motion to compel.  On April 13, 2012, he billed six hours for "[m]emo and exhibits, complete and file."  On December 5, 2012, he billed 12 minutes for filing a reply memo.  The undersigned will compensate one-half of the time spent on these tasks using a paralegal rate.

11

The undersigned also deducts 100.89 hours from petitioners' fee application for 2012 due to a shocking amount of time billed for work irrelevant to petitioners' medical theory, as well as descriptions that are vague, excessive, and constitute block billing. On February 22, 2012, Mr. McHugh billed two hours for "[r]eceiving and review[ing] purple book. The undersigned notes that the one hour and 12 minutes billed on March 21, 2012, to work on "[m]otion to revise caption," is excessive, as well as the 18 minutes billed on March 29, 2012, for "[m]otion to amend caption." Mr. McHugh also billed 12 minutes on March 21, 2012, presumably for a telephone conference. However, the entry simply states, "T/cs" and nothing more. The undersigned will not compensate Mr. McHugh for this poorly documented time.

On April 1, 2012, Mr. McHugh billed five hours and 20 minutes for "[r]eply review motion papers received." This entry lacks detail, is unclear, and appears excessive. Also on April 1, 2012, Mr. McHugh billed one hour and 30 minutes for an entry that simply states "[e]-mail," and another two hours and 12 minutes for "[d]eclaration." These entries are vague and contain no detail or explanation as to the purpose or reason for the work performed. The undersigned will not compensate Mr. McHugh for this time.

On April 3, 2012, Mr. McHugh again billed three and a half hours of time for "[d]eclarations," but no declarations are contained in any of petitioners' filings from April to June of 2012. The entry is so vague that it will not be compensated.

On April 6, 2012, Mr. McHugh billed half an hour for "drafting," and on April 12, 2012, he billed eight hours for "[m]emo, etc." Also on April 12, 2012, Mr. McHugh billed 18 minutes for "Dec. did not use," which is unclear. Because these entries are vague, the undersigned will not compensate Mr. McHugh for this time.

On May 25, 2012, Mr. McHugh billed one hour for "[a]rrangements for Chicago Performance," which is at best administrative work. The undersigned will not compensate Mr. McHugh for this time.

On May 30, 2012, and June 2, 2012, Mr. McHugh collectively billed three hours and 42 minutes for "[l]etter to B. Segal." It is unclear who B. Segal is, why Mr. McHugh is writing to him or her, and how this time is relevant to petitioners' medical theory. Also on June 2, 2012, Mr. McHugh billed three and a half hours presumably reviewing articles, which the undersigned finds excessive.

On July 4, 2012, Mr. McHugh bills 42 minutes for a telephone conference regarding "information needed from Drew." The undersigned finds this entry to be vague, and thus she will not compensate Mr. McHugh for this time.

The undersigned also deducts the three hours and 48 minutes Mr. McHugh spent on August 2, 2012, to "[a]nswer to reply, documents motion," as it is vague and appears excessive. On August 10, 2012, Mr. McHugh billed half an hour for "[r]eviewing position of NVIC," and on August 21, 2012, he billed 18 minutes for "[r]eview[ing] Autism Now statement." These entries are irrelevant to petitioners' medical theory, and the undersigned will not compensate Mr. McHugh for them.

On October 2, 2012, Mr. McHugh billed half an hour for a meeting with Mr. Nadler regarding Dr. Deisher. On October 3, 2012, Mr. McHugh billed one hour and six minutes for

"[l]etter to Mr. Nadler," and the next day, he billed another one hour and six minutes for "[l]etters re: meeting with Mr. Nadler." The undersigned finds these entries vague at best. Mr. Nadler is not an expert witness and petitioners have not given any explanation as to how this time is reasonable or necessary for their case. Mr. McHugh will not be compensated for this time.

The undersigned will also not compensate Mr. McHugh for any of his vague, excessive, and potentially irrelevant entries from October 25, 2012, through November 1, 2012. During this time, Mr. McHugh billed two hours and 12 minutes for "Dr. Deisher dec [sic] in Panzi [sic] case," two hours and 18 minutes for "[m]otion to intervene," and one hour and six minutes for "[r]eview presentation to VIB." Additionally, Mr. McHugh billed 30 minutes for both "Penzi dec [sic], obtain chart," and "Dr. Deisher re: appearance before vaccine bar." The undersigned finds all of these entries vague and/or otherwise unclear.

The undersigned will not compensate Mr. McHugh for his November 19, 2012 entry for an hour and a half spent on "Congressional, iom [sic] hearing e-mails," as this entry is vague. Neither will the undersigned compensate Mr. McHugh for the 20 minute telephone call with "Olsky" on December 22, 2012, regarding Dr. Deisher's theory, as this is vague and appears irrelevant.

The undersigned also reduces Mr. McHugh's fees by one half on the following dates: March 12 ("[r]eview theory and statements w/ TD"; April 6 ("[c]ontinue research on motion reply"); April 9 ("[m]otion reply"); April 10 ("[c]ontinue drafting reply"); April 10 ("[c]ontinue reply research, articles history"); April 10 ("[c]ontinue reply research"); April 10 ("[m]otion"); April 11 ("[m]otion, obtain articles cited in articles and drafting"); April 16 ("[r]eview file-orders (HS)"); May 14 ("[r]esearch on safety testing done"); May 14 ("[r]eview 5/16/2001 minutes"); May 14 ("[m]otion to allow subpoenas reply"); July 11 ("[c]ontinue reply); July 11 ("[r]eply to reply"); July 12 ("[e]dit reply draft"); July 13 ("[e]dit reply"); July 13 ("[r]eply on motion to compel"); October 1 ("Mostovoy-Penzi Deisher dec. [sic] Varacella [sic] stats"); November 2 ("[m]otion to supplement the record motion [sic]"); November 3 ("[m]otion to supplement the record"); November 8 ("[r]eview powerpoint; obtain literature"); and November 8 ("[r]eview graph and data"). The undersigned finds all of these entries to be vague and excessive, and she further notes that several of the entries constitute block billing, as some request compensation for more than four hours and up to nine hours and 48 minutes at one time.[17] Furthermore, these billings lack detail regarding the work performed and are excessive. The undersigned will thus only compensate Mr. McHugh for half of the 102.43 hours spent on these entries.

The undersigned also reduces Mr. McHugh's attorneys' fees for the time spent he spent fundraising. In 2012, Mr. McHugh billed 20.1 hours for fundraising activities. On February 29, 2012, he billed two and a half hours for "[m]emo on strategy for raising funds," and on March 1, 2012, he billed one hour and 36 minutes for "[m]emo to bar re: theory and seeking assistance." Mr. McHugh billed two hours for "Dr. Deisher presentation re: funding," on May 26, 2012. On June 13, 2012, he collectively billed five hours and 18 minutes for drafting letters and emails, editing documents, and holding conference calls in an effort to raise money. On July 6, 2012, he collectively billed three hours and 36 minutes for "[l]etters re: funding needed to continue." On July 30, 2012, Mr. McHugh billed three hours and 18 minutes to "[w]ork on funding of study,"

---

[17] See Pet'r's App., April 10, 2012 ("[m]otion"), for which Mr. McHugh billed nine hours and 48 minutes.

and on August 6, 2012, he billed 42 minutes to send a letter to Donald Trump regarding "finding [sic]". On August 8, 2012, Mr. McHugh billed 12 minutes for a telephone call with the "NVIC" regarding "position," and on August 15, 2012, he billed 48 minutes for "letter re: funding of study." Finally, on October 4, 2012, Mr. McHugh billed six minutes for a telephone call regarding "financing Dr. Deisher."

The undersigned also reduces the number of billable hours Mr. McHugh spent traveling in 2012 by one half. These entries include the following: February 24 ("[t]ravel to DC"); February 26 ("[t]ravel to NY"); May 25 ("[t]ravel to Chicago"); May 30 ("[r]eturn to New York"); and November 15 ("[t]ravel to DC"). In 2012, Mr. McHugh billed a total of 19.75 hours for travel, and thus the undersigned will only compensate him for 9.88 total hours of travel.

The undersigned reduces Mr. McHugh's total billable hours in 2012 by 135.22 hours and will compensate him for 289.02 hours at his requested rate of $345.00 per hour and 3.15 at a rate of $100.00 per hour. The undersigned thus awards Mr. McHugh $100,026.90 for work performed during 2012.

### 10. 2013

In 2013, petitioners request compensation for 486.39 hours billed by Mr. McHugh. The undersigned will compensate Mr. McHugh for 267.64 hours of work at his attorney rate and 19.65 hours at a paralegal rate and deducts 32.75 hours of administrative time, 157.55 hours of irrelevant, excessive, and/or block billing, eight tenths of an hour spent fundraising, and eight hours of travel time.

On March 11, 2013, Mr. McHugh billed 12 minutes for "[r]eceiv[ing] and [r]eview[ing] Sound Choice Invoice," and on April 1, 2013, he billed six minutes for "[e]-mail re: conference call." On September 24, 2013, Mr. McHugh billed 48 minutes to "[p]lan trip to Portland Oregon for peer review conference." On September 30, 2013, he billed 42 minutes for "[e]-mails re: conference code [sic] on 12-11-13." Similarly, on October 17, 2013, Mr. McHugh billed 36 minutes to "[m]ake conference for 12-11-13 conference in Portland," and on October 22, 2013, he billed 48 minutes for "[t]ravel arrangements to Portland for conference." On November 13, 2013, Mr. McHugh billed one hour and six minutes for "[c]omputer compatibility issues," and on December 3, 2015, he billed eight hours and 18 minutes to "[r]eceive[] and process[] disk with all Articles." On December 23, 2013, he billed 30 minutes to "[f]orwarad [sic] report to Dr. Kinsbourne." The undersigned finds that all of these billings reflect tasks that are administrative in nature and thus will not compensate Mr. McHugh for them.

On July 12, 2013, Mr. McHugh billed five hours for "[c]orrection on Memo; Prepare Exhibits for filing." On July 16, 2013, he billed one hour for "[c]heck[ing] Exhibits for duplications against Exhibits previously filed; Assign Exhibit Numbers." On November 15, 2013, he billed three hours for downloading articles. On November 19, 2013, he billed nine hours and 12 minutes to "[c]onvert Refs. to Exhibits, list missing," and on November 20 and 25, 2013, he collectively billed six and a half hours to "[c]ontinue registering Exhibits in order." On December 5, 2013, he billed five hours and 24 minutes for processing articles and exhibits and updating exhibit lists. On December 6 and 9, 2013, Mr. McHugh collectively billed six hours and 18 minutes for preparing a supplemental expert report and exhibits for filing. On December 13, 2013, he billed two and a half hours for "[c]ontinu[ing] [to] process[] Exhibits." On

December 20 and 23, 2013, he collectively billed 24 minutes for filing documents on CM/ECF. The undersigned finds that all of these billings should be reduced by one half and compensated at the paralegal rate of $100 per hour.

The undersigned also reduces Mr. McHugh's billable hours for time spent on tasks that were not described with sufficient detail, are excessive, or which constitute block billing. On January 3, 2013, Mr. McHugh billed one hour and 42 minutes for "[r]eview[ing] Olskey's comments on Draft Report III." On May 1, 2013, he billed one hour for writing a letter to a Mr. Nadler "re access to VSD via his office." Also on May 1, 2013, Mr. McHugh billed one hour and 12 minutes to edit an abstract, but the undersigned is unclear as to what abstract he refers and why Mr. Nadler is relevant to petitioners' medical theory of causation.

On May 2, 2013, Mr. McHugh billed half an hour to review a cover letter to the New England Journal of Medicine, which the undersigned finds vague. Again on May 3, 2013, Mr. McHugh billed three hours and 12 minutes to "draft [a] letter to Mr. Nadler," and on May 25, 2013, he billed one hour and 18 minutes for "[r]eview[ing] draft abstract submission." The undersigned finds these billings are vague and lack sufficient detail.

Mr. McHugh billed 12 minutes on June 14, 2013, for sending emails related to a patent, without explaining the relevance to this case. On June 17, 2013, Mr. McHugh billed three hours and 24 minutes for "review[ing] articles received," but he fails to specify who sent them, what they are, or why he is reviewing them. On June 18, 2013, he billed 48 minutes for an email regarding a "decision of hit and run," which the undersigned finds completely irrelevant. On June 24, 2013, Mr. McHugh billed two hours for "[m]otion," which is vague and lacks requisite detail. On June 25, 2013, Mr. McHugh billed three hours and 18 minutes to review Dr. Deisher's patent applications, which again the undersigned finds irrelevant. On July 13, 2013, Mr. McHugh billed one hour and 12 minutes for editing petitioners' motion for reconsideration, which the undersigned finds excessive. On July 15, 2013, he billed four hours for "[c]ontinuation of edits to Dr. Deisher's supplemental report, add definitions for all undefined terms using internet to research information," which the undersigned finds constitutes block billing and is also duplicative, as there is an identical entry on the same date.

On August 19, 2013, Mr. McHugh billed 12 minutes for a telephone call regarding Autism Speaks, a national conference on Autism, without explanation of how it relates to this case. Similarly, on August 26, 2013, Mr. McHugh billed 12 minutes to send Dr. Deisher's reports to Autism One. These billings are also administrative in nature. On September 4, 2013, Mr. McHugh billed 48 minutes for "[s]urvey if [sic] SN cases, Review," which the undersigned finds vague. On September 9, 2013, Mr. McHugh billed 24 minutes for "[e]-mails Safe Minds re: VSD data," which petitioners have not explained. On October 24, 2013, Mr. McHugh billed two hours and 12 minutes for "[r]eveiw[ing] draft," which is vague, and another half an hour for reviewing patents.

On November 7, 2013, Mr. McHugh billed 48 minutes for "[r]eview[ing] rules for presentations, OSUMS," which the undersigned finds vague. On November 8, 2013, he billed an hour and a half for "[e]dits supp. opinion, review," which the undersigned finds unclear and constitutes block billing. On November 12, 2013, Mr. McHugh collectively billed two hours and 12 minutes for reviewing Dr. Deisher's patents and holding a telephone conference about them. The undersigned finds this irrelevant. Also on November 12, 2013, Mr. McHugh billed four

hours and 12 minutes to "[c]heck citations against documents," which the undersigned finds excessive.

On November 15, 2013, Mr. McHugh billed one hour and 42 minutes for a telephone conference and letter to Dr. Jewell, which the undersigned finds vague and irrelevant, as Dr. Jewell is not an expert in petitioners' case.  On November 27, 2013, Mr. McHugh billed two hours and six minutes for "[f]inal edits," which lacks detail.  On December 9, 2013, he billed two hours to "[p]repare for grand rounds," and on December 11, 2013, he billed three hours to attend grand rounds.  On December 16, 2013, Mr. McHugh billed 30 minutes to "[r]espond to publication letter," and on December 17, 2013, he billed two hours and six minutes for drafting a letter to Congresswoman Slaughter.  There is no explanation for why these entries are relevant and thus the undersigned finds all of this time irrelevant.

In addition to these deductions, the undersigned also reduces Mr. McHugh's billable time by one half on the following dates in 2013 for vague, excessive, irrelevant, and block billing: June 12 ("[r]espond to decision e-mails"); June 16 ("[r]eview decision and record); June 17 ("[r]eview history of DNA-FDA"); June 19 ("[m]otion for reargument [sic]"); June 20 ("[m]otion for reargument [sic]"); June 21 ("[m]otion continue drafting"); June 24 ("[m]otion, continue reviewing articles") June 25 ("[e]dit motion"); June 25 ("[e]dit Dr. Deisher dec."); June 27 ("[m]otion continue drafting and research"); June 28 ("[e]dit motion"); June 28 ("[m]otion; Gather exhibits") June 28 ("[e]dits research"); July 9 ("[e]dit Motion for re-consideration"); July 11 ("[f]inish draft memo; Edit memo; gather exhibits; find and confirm citations/legal research. Order missing articles from University of California, San Francisco. Review articles.") July 11 ("[e]dit memo"); July 12 ("[e]dit meeting [sic] for reconsideration"); July 14 ("[e]dit Dr. Deisher's supplemental report, researched and add definitions for all undefined terms"); July 15 ("[c]ontinuation of edits to Dr. Deisher's supplemental report, add definitions for all undefined terms using internet to research information"); July 17 ("[r]eview all downloaded articles; made corrections and prepared for filing; Assign Exhibit numbers"); July 20 ("[r]eview literature; E-mails to Dr. Deisher"); July 20 ("[c]ontinue to review literature"); July 24 ("[a]dd definitions to Supplemental report"); July 26 ("[e]-mail re: corrections"); July 30 ("[c]ontinue to edit"); July 31 ("[e]-mail with Dr. Deisher re: draft"); July 31 ("[r]eview articles and revisited draft"); August 1 ("[r]eview draft; Read literature"); August 5 ("[w]orked on Dr. Deisher's Supplemental Report, review supporting articles, Group 1. Numerous emails"); August 6 ("Dr. Deisher, review article in support"); August 6 ("[t]elephone conference call re: supplemental material and the need for additional material to clarify points"); August 9 ("[r]esearch deadline issue. Begin Memo"); August 14 ("[r]eply memo research"); August 15 ("[r]eview articles; Sent e-mail re: cancer-autism genetics"); August 21 ("[r]eply research"); August 22 ("[r]eply memo"); August 25 ("[r]eply memo"); August 26 ("[r]eply Memo. Edit and check citations") August 27 ("[c]ontinue edits, fact checks, citations"); August 29 ("[c]omplete and file memo"); September 6 ("Dr. Deisher supplemental report. Review supports") September 17 ("Dr. Deisher supplemental report edit. Review supports"); September 19 ("review WHO and IOM minutes re standards"); September 23 ("[e]diting supplemental checking references"); September 24 ("[r]eview draft"); October 29 ("[r]eview draft"); October 29 ("[c]ontinue review of evidence filed"); October 29 ("[r]eview literature and opinion"); November 5 ("[e]-mail re: more on background"); November 7 ("[r]eview articles"); December 9 ("[f]ind Kraus Article; review; continue working on Exhibits (PL)"); December 18 ("[n]otice of filing on CD"); December 18 ("[d]raft Notice of filing on CD; note missing documents"); December 19 ("[r]eview final support report; E-mail to Dr. T-Deisher"); and December 19 ("[a]dd final exhibits; correct and finalize notice").  The undersigned finds these entries to be vague and excessive, and a number of them constitute block

16

billing.  Thus, Mr. McHugh will only be compensated for one half of the 218.7 hours spent on these billings.

The undersigned also reduces Mr. McHugh's fees for the 48 minutes on January 6, 2013, he spent on "[l]etter to Louise re: VSD Study funding."  Petitioners have not offered any explanation as to why it is necessary for Mr. McHugh to participate in fundraising activities.  Mr. McHugh will thus not receive compensation for this time.

The undersigned also reduces Mr. McHugh's fees by one half for the sixteen hours that he spent traveling in 2013.  On December 10, 2013, Mr. McHugh billed eight hours for traveling to Portland, Oregon for grand rounds, and on December 12, 2013, he billed eight hours to return to New York.  As the undersigned has previously explained, Mr. McHugh will not be compensated for time spent at grand rounds, as these activities are completely irrelevant.  However, as Mr. McHugh billed time during this trip to meet with one of petitioners' expert witnesses, the undersigned will compensate him for his travel time at one half of his hourly rate.

Petitioners requested compensation for 486.39 hours for the work Mr. McHugh performed in 2013.  After the deductions discussed above, the undersigned awards Mr. McHugh fees for 267.64 billable hours at his requested rate of $350 per hour and 19.65 billable hours at a rate of $100.00 per hour.  The undersigned thus awards Mr. McHugh $95,639.00 for work performed in 2013.

## 11. 2014

Petitioners request compensation for 151.28 billable hours in 2014.  The undersigned will compensate Mr. McHugh for 83.63 hours of work at his attorney rate and 9.05 hours of work at a paralegal rate and deducts 10.55 hours of administrative time, 44.95 hours of irrelevant, excessive, and/or block billing, and 3.1 hours spent fundraising.

On February 25, 2014, Mr. McHugh billed 12 minutes for receiving and reviewing an invoice.  On April 14, 2014, he billed 48 minutes to "[s]end email notice to Hippenstein [sic], Reddick, Bhuiwala [sic] and Palace."  On July 1, 2014, he billed another half an hour for "[d]ispatch[ing] case reports to other four attorneys for consideration."  The undersigned will not compensate the time expended on these administrative tasks.

On May 14, 2014, Mr. McHugh billed 18 minutes for receiving a letter from Dr. Tuffler and drafting and filing a notice of filing.  On June 11, 2014, he billed half an hour for "[m]otion to Amend Schedule; File."  On July 7, 2014, he billed four and a half hours to assemble exhibit books, and on July 16, 2014, he billed five hours for "[r]eviewing Exhibits against supplemental opinion and organizing Exhibits in Trial Book form."  On July 24, 2014, Mr. McHugh billed four hours to prepare and review exhibits.  On August 18, 2014, he billed 18 minutes to revise and file a motion to amend the schedule, and on August 21, 2014, he billed three and a half hours to review Dr. Deisher's reference list and compare it to the documents requested by the court.  The undersigned will compensate Mr. McHugh for one-half of these hours at a paralegal rate.

The undersigned also deducts 44.95 billable hours from petitioners' attorneys' fees due to vague, excessive, irrelevant, and block billing.  On May 9, 2014, Mr. McHugh billed 12 hours to send an email to "Dr, [sic] Toffler approving his opinion letter."  The undersigned presumes this billing is erroneous and will instead compensate Mr. McHugh for 12 minutes of his time, rather

12 hours.  On May 27, 2014, Mr. McHugh billed two hours to attend a presentation on autism. Without further information, the undersigned finds this time irrelevant.  On November 14, 2014, Mr. McHugh billed seven hours and 18 minutes to "[r]eview[] 1999 FDA conference on the risks on DNA on vaccines finding and outlining material outlined by Dr. T. Deisher and determining the accuracy."  The undersigned finds that this billing is excessive given the countless other hours that Mr. McHugh spent reviewing medical literature.

The undersigned also reduces Mr. McHugh's billable hours by one half on the following dates for vague, excessive, irrelevant, and block billing: June 16 ("[o]mnibus Motion for access to the Vaccine Safety Deadline [sic] VSD"); June 17 ("[o]mnibus Motion for Access to VSD"); June 21 ("[c]ontinue drafig [sic] VSD Motion for consideration [sic]"); June 26 ("[r]eview Dr. Deisher general preparation of her report. Comparing autism criteria from DSM 1-5"); June 27 ("[c]onvert VSD Motion to a Motion to require 4C Report"); June 30 ("[c]ontinue of [sic] VSD motion"); July 1 ("[p]roofread Motion; Analyzing cases for Omnibus case; set up system/chart to proceed further"); July 2 ("[s]et up conference call with Dr. Deisher and Dr. Gary Richwald. Review documents and send it to Dr. Richwald"); August 12 ("[c]ontinued paralelgal [sic] – review exhibit list and organized trial book of exhibits and cross-check accuracy of references. T/C with Dr. T. Deisher in re: status. T/C with Richwaldre: [sic] need for adjournment due to Dr. Deisher's son['s] medical condition and draft Motion to amend schedule"); November 7 ("[r]eviewing Dr. T. Deisher's 2nd Report and comparing her reference list with the evidence books and obtaining and adding missing articles"); and November 7 ("[c]ontinued same as above").  The undersigned finds these entries vague and excessive and notes that some are irrelevant and several constitute block billing.  Thus, the undersigned will only compensate Mr. McHugh for one half of the 47.7 total hours he spent on these entries.

The undersigned also deducts 3.1 hours from petitioners' fees for 2014 for time that Mr. McHugh spent fundraising.  On June 23, 2014, Mr. McHugh billed two hours for reviewing Dr. Deisher's application to the NIH for funding and drafting a letter of intent.  On July 22, 2014, Mr. McHugh billed one hour and six minutes of time for "[e]-mail to Dr. Deisher in re: funding request. Review Exhibits 60-73 for accuracy."  The undersigned also notes that this entry also constitutes time spent on administrative activities.  Mr. McHugh will not receive compensation for these entries.

The undersigned reduces Mr. McHugh's total billable hours in 2014 by 67.65 hours and will compensate him for 83.63 hours at his requested rate of $400.00 per hour and 9.05 hours at the rate of $100.00 per hour.  The undersigned thus awards Mr. McHugh $34,357.00 for work he performed in 2014.

### b.  Costs

Petitioners request $90,627.00 in costs for the years 2001 to 2012.  For the following reasons, the undersigned awards petitioners $12,326.56 in costs.

### i.  Costs for Expert Witnesses

### 1.  Dr. Harold Buttram

Petitioners request a total of $1,500.00 to compensate Dr. Buttram for his medical expert report.  Petitioners provide two invoices for Dr. Buttram's services.  The first states that Dr.

Buttram charged $1000.00 for drafting his report over the course of eight hours, and the second states that Dr. Buttram charged $500.00 to spend between six and seven hours "reworking" this same report.  See ECF No. 186-1 dated December 9, 2015, at 1, 7.[18]  The Guidelines for Practice clearly disfavor block billing for experts.  See Rodriguez, 2009 WL 2568468 at *22 ("The Guidelines for Practice state that petitioner should explain costs sufficiently to demonstrate their relation to the prosecution of the petition.  Without invoices, it is impossible to determine precisely what services [the expert] rendered or at what cost.") (internal quotations omitted) (citing Guidelines for Practice at 69 (Section X, Chapter 3, Part B(2)).  However, given that the time spent by Dr. Buttram is not excessive and the hourly rates he charged are reasonable,[19] the undersigned awards petitioners $1,500.00 for the medical expert report of Dr. Buttram.

### 2. Dr. Deisher and Sound Choice Pharmaceuticals

Petitioners also request compensation in the amount of $65,400.00 for the payments made to Dr. Theresa Deisher and her company, Sound Choice Pharmaceuticals, for her services as an expert witness.  Petitioners' application, however, contains no invoices from Dr. Deisher and thus there is no record of the work Dr. Deisher performed, the dates she worked, and the number of hours she spent on each project.  Petitioners have a clear obligation to monitor the fees charged by their experts.  Rodriguez, 2009 WL 2568468, at *22 (citing Perreira v. Sec'y of Health & Human Servs., 1992 WL 164436, at *10 (Fed. Cl. Spec. Mstr. Jun. 12, 1992), aff'd, 33 F.3d 1375 (Fed. Cir. 1994)).  Moreover, the Guidelines for Practice in the Vaccine Program make it clear that petitioner should explain costs "sufficiently to demonstrate their relation to the prosecution of the petition."  Guidelines for Practice at 69 (Section X, Chapter 3, Part B(2)).  Without invoices from Dr. Deisher, it is impossible for the undersigned to determine what services she rendered and how much time she spent.  Therefore, the undersigned will not award petitioners expert costs for Dr. Deisher at this time.  Should petitioners wish to pursue these expenses in the future, they should submit invoices that clearly delineate the work performed by the expert, the amount of time spent, and the hourly rate charged.[20]

---

[18] Because petitioners' failed to clearly label and paginate their application for fees and costs, this section refers to the CM/ECF document and page numbers.

[19] Although Dr. Buttram's invoice does not state the amount of time he billed per hour to draft his expert report, the undersigned inferred an hourly billing rate of $125.00 per hour for the first invoice and approximately $85.00 per hour for the second invoice, based upon the number of hours worked divided by the total fee charged.

[20] The undersigned notes that Special Master Vowell issued a similar warning to Mr. McHugh in Rodriguez, stating, "Mr. McHugh is on notice that invoices shall be submitted for any costs, either those claimed personally by petitioners or those he claims on behalf of his practice, in future fees and costs applications or he risks the denial of all costs claimed or which invoices are not provided.  Invoices from experts should provide sufficient detail, includ[ing] the dates the services were performed, the nature of the services, and the hourly rate, to permit a determination that the fees requested are reasonable."  Rodriguez, 2009 WL 2568468, at *21.

### ii.   Costs for Consultation Services

Petitioners request compensation in the amount of $3,750.00 for the expert consultation services of Dr. Gary Richwald.  Petitioners submitted two invoices for Dr. Richwald's services.  The first invoice, dated June 12, 2014, states that Dr. Richwald collectively spent two and a half hours on May 18, 2014, and June 5 -10, 2014, discussing petitioners' case with Dr. Deisher and Mr. McHugh.  ECF No. 187-3 dated December 9, 2015, at 15.  The invoice totals $1,250.00 for these services.  Id.  A second invoice dated October 7, 2014, states that Dr. Richwald spent 15 total hours discussing the case with Dr. Deisher and Mr. McHugh, reviewing documents, and participating in preliminary discussions with potential consultants.  ECF No. 187-3 dated December 9, 2015, at 18.  The second invoice is for $2,5000.00 and states that Dr. Richwald charges $500.00 per hour.[21]  Id.  Given that the amount of time is not excessive and the rates are reasonable, the undersigned awards petitioners $3,750.00 for the expert consulting services of Dr. Richwald.

Petitioners also request costs for the expert consultation services of Dr. Richard Goldstein.  Petitioners submitted documentation of Dr. Goldstein's standard rate of $520.00 per hour.  On this same document, handwriting appears in the lower left hand corner stating, "Services Rendered by Dr. Richard Goldstein re: Mostovoy v. HHS. 15 [hours] [at] $520.00 = $7,800.00."  ECF No. 187-3 dated December 9, 2015, at 21.  However, petitioners did not submit an invoice from Dr. Goldstein's office detailing the dates he worked, the work performed, or the amount of time he spent.  As explained above, petitioners bear the burden of monitoring the fees charged by the experts and sufficiently explaining their costs.  Therefore, the undersigned will not award petitioners interim expert costs for Dr. Goldstein.  Should petitioners wish for the undersigned to consider awarding costs for Dr. Goldstein's services in the future, they should include a detailed invoice stating the work performed, the date it was performed, and the amount of time he spent.  Block billing will not be permitted.

### iii.   Other Costs

Petitioners request reimbursement in the amount of $250.00 for "John Williams-Research."  ECF No. 184-1 filed December 8, 2015, at 6.  The only documentation of the payment to Mr. Williams for his services was a copy of an electronic check in the amount of $250.00.  Id. at 10.  Petitioners do not explain who Mr. Williams is, what kind of research he performed, how many hours he spent, or any dates that he worked.  Therefore, the undersigned will not pay Mr. Williams' costs at this time.  Should petitioners wish for the undersigned to consider awarding costs to Mr. Williams in the future, they should include a detailed invoice stating the research he performed, the dates he worked, the total amount of time spent, and the hourly rate charged.

Petitioners request $15.00 for reimbursement of costs for "NEJM Mass Medical Socie [sic]."  ECF No. 187-1 dated December 9, 2015, at 4.  The undersigned finds this entry vague.  Petitioners have failed to explain how these costs are reasonable, necessary, or relevant to their medical theory of causation.

---

[21] The invoice further states that the $2,500.00 represents the first installment of payment for the 15 hours of services Dr. Richwald provided.

Petitioners request $200.20 in costs for dinner at Bobby Van's, a restaurant in Washington, D.C., on February 24, 2012. ECF No. 187-1 dated December 9, 2015, at 7. Petitioners request $113.64 in costs for dinner at Benihana, a restaurant in Seattle, Washington, on June 19, 2012. Id. at 19. Petitioners additionally request $145.73 for dinner at Wild Ginger, a restaurant in Seattle, Washington, on September 19, 2012. Id. at 27. The undersigned will award petitioners $147.70 in costs for dinner at Bobby Van's but deducts $52.00 spent on 216 Paraduxx, a bottle of wine, as this is excessive. The undersigned will not award petitioners costs for the other two meals, ($113.64 and $145.73) as no receipts were provided for these meals and petitioners have not provided any other reason as to why they were reasonable or necessary.

Petitioners request $18.59 in costs for sending documents to Mr. Donald Trump via FedEx. ECF No. 187-1 dated December 9, 2015, at 18. Petitioners have not explained why it was reasonable or necessary to send Mr. Trump documents related to their case. Similarly, petitioners request reimbursement in the amount of $20.26 for sending documents to Mr. Barry Segal of Focus Autism. Petitioners have failed to explain why these costs are reasonable or necessary, and the undersigned will not pay these costs.

The undersigned also reduces petitioners' costs for the $32.00 charged on August 1, 2013, for what Mr. McHugh has marked as "legal books". ECF No. 187-2 dated December 9, 2015, at 7. Petitioners have not explained why these costs are reasonable or necessary.

The undersigned also reduces petitioners' award for the costs related to Mr. McHugh's attendance at the Autism One Conference in Chicago, Illinois. These costs include the $99.00 registration fee, $50.00 in travel expenses, $330.00 for Mr. McHugh's hotel, and $224.22 for having documents mailed to Mr. McHugh while he attended the conference. ECF No. 187-3 dated December 9, 2015, at 10-12, 14. Petitioners have not explained how these expenses are relevant and thus the undersigned will not reimburse them.

Finally, petitioners request $3,750.00 for "various office copies," for which they provide no further detail or documentation. ECF No. 184-1 dated December 8, 2015, at 8. The undersigned finds these costs excessive and thus will not reimburse petitioners for them without further documentation.

### III.    Conclusion

For the reasons set forth above, the undersigned finds that petitioners are entitled to an award of interim attorneys' fees and costs. The amount of the award is computed as follows:

| | |
|---|---|
| Interim Attorneys' Fees: | $305,942.75 |
| Interim Costs: | $12,326.56 |
| Total Attorneys' Fees & Costs Awarded: | **$318,269.31** |

**Accordingly, the court awards $318,269.31, in the form of a check payable jointly to petitioners and petitioners' attorney, Mr. John McHugh.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of court shall enter judgement in accordance herewith.[22]

**IT IS SO ORDERED.**

s/Nora Beth Dorsey
Nora Beth Dorsey
Chief Special Master

---

[22] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party, either separately or jointly, filing a notice renouncing the right to seek review.