# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
Filed: February 13, 2018
PUBLISHED

| | | |
|---|---|---|
| * * * * * * * * * * * * * * | * | 02-10V |
| J.M. and V.M., in their own right and | * | |
| as Guardians of their son, V.J.M., | * | Chief Special Master Dorsey |
| | * | |
| | * | Attorneys' Fees & Costs; |
| | * | Appropriate Hourly Rates; Vague, |
| Petitioners, | * | Excessive, and Block Billing; |
| v. | * | Failure to Sufficiently Document |
| | * | Costs; Fees Requested for |
| SECRETARY OF HEALTH | * | Research; Payment for Travel |
| AND HUMAN SERVICES, | * | and Administrative Costs. |
| | * | |
| Respondent. | * | |
| * * * * * * * * * * * * * * | * | |

<u>John F. McHugh</u>, Law Office of John McHugh, New York, NY, for petitioners.
<u>Ann Donohue Martin</u>, U.S. Department of Justice, Washington, D.C., for respondent.

### DECISION AWARDING ATTORNEYS' FEES AND COSTS[1]

On January 4, 2002, J.M. and V.M. ("petitioners") filed a petition for compensation under the National Vaccine Injury Compensation Program[2] ("the Program"), as the legal representatives of their son, V.J.M., in which they alleged that the measles, mumps and rubella ("MMR") vaccination V.J.M. received in January 1999 caused him to develop autism or autism spectrum disorder ("ASD").[3]

---

[1] This decision will be posted on the website of the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012). This means the Decision will be available to anyone with access to the internet. As provided by 42 U.S.C. § 300aa-12(d)(4)B), however, the parties may objection to the published Decision's inclusion of certain kinds of confidential information. Specifically, Under Vaccine Rule 18(b), each party has 14 days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole decision will be available to the public in its current form. <u>Id.</u>

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-1 to -34 (2012) ("Vaccine Act" or "the Act"). All citations in this decision to individual sections of the Vaccine Act are to 42 U.S.C. § 300aa.

[3] This Decision awards final attorneys' fees and costs for work performed by petitioners' counsel, Mr. John McHugh, in this case and the <u>J.M. et al.</u> omnibus proceeding.

Petitioners' first motion for interim attorneys' fees and costs was filed on December 8, 2015, and awarded fees and costs from the beginning of the case up until 2014. [redacted] v. Sec'y of Health & Human Servs., No. 02-10V, 2016 WL 720969 (Fed. Cl. Spec. Mstr. Feb. 4, 2016). In their interim fee request, petitioners requested a total of $555,687.00, including $465,060.00 in attorneys' fees and $90,627.00 in costs. Id. at *2. In that Decision, petitioners were awarded a total of $318,269.31, including $305,492.75 in attorneys' fees and $12,326.56 in costs. Id. The undersigned increased Mr. McHugh's hourly rate to as much as $400.00 per hour for work performed in 2014, in accordance with the rates set forth in McCulloch v. Sec'y of Health & Human Servs., 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015), but reduced Mr. McHugh's overall invoice by nearly 35 percent due to his billing for administrative work, fundraising, travel time, block billing, and for the number of vague, excessive, and/or irrelevant billing entries. [redacted], 2016 WL 720969, at *6-8. The undersigned also reduced petitioners' costs by over 86 percent, as many costs were not substantiated and invoices were not provided by petitioners' experts.[4] Id., at *18-21.

On June 7, 2017, petitioners filed a second motion for interim fees and costs. Petitioners' Application ("Pet. App.") dated June 7, 2017 (ECF No. 279). Petitioners requested an award of $320,423.00 in attorneys' fees for work performed by Mr. McHugh from February 2015 through November 2016, $9,719.00 for paralegal work performed by Mr. McHugh, and $580,991.52 in costs incurred during the same time period, as well as costs for petitioners' expert witnesses. Pet. App. at 1, 2. Thus, in their second motion, petitioners' interim fees request amounted to $911,133.52.[5] Id. Respondent filed his response to petitioners' motion for interim fees and costs on June 21, 2017, leaving the appropriate amount of an award of attorneys' fees and costs to the undersigned's discretion. Respondent's Response ("Resp. Res.") dated June 21, 2017 (ECF No. 280). Petitioners did not file a reply.

Since the filing of petitioners' motion for interim fees and costs, on August 31, 2017, the undersigned issued a decision dismissing this case, as well as the 22 other cases in the J.M. et al. omnibus. Decision dated Aug. 31, 2017 (ECF No. 281). Judgment entered on October 5, 2017, and the case is now closed. On October 12, 2017, the undersigned ordered petitioners to file a final application for attorneys' fees and costs, which they did on November 13, 2017. Petitioner's Supplemental Motion ("Pet. Supp. App.") dated Nov. 13, 2017 (ECF No. 292). This supplemental motion requests an additional $22,808.00 in attorneys' and paralegal fees, much of which is for time spent preparing a response to the undersigned's order requesting additional clarification and documentation regarding petitioners' fee application. Respondent did not file a response.

On September 25, 2017, the undersigned ordered petitioners to file additional information clarifying their motion for attorneys' fees and costs. Order dated Sept. 25, 2017 (ECF No. 285). Specifically, the undersigned requested that petitioners clarify several ambiguities within their

---

[4] The undersigned takes a similar approach to significantly reduce the amount awarded for fees and costs as she took previously with regard to petitioners' interim application for fees and costs.

[5] Petitioners' summary of fees and costs indicates that the total amount due for attorneys' fees in 2015-2016, including paralegal fees, is $320,423.00. This appears to be a math error, as the amount requested for attorney work is $320,423.00 and the amount requested for paralegal work is $9,719.00, totaling $330,142.00. See Pet. App., Ex. 710 at 12.

fee request, including invoices for FedEx, copies, payments made to Don Ciccone, an additional invoice from Ms. Doan clarifying the number of hours she spent preparing to testify at the hearing, and an explanation of the expenses for Dr. Kinsborne, who did not testify or submit an expert report in this matter.  Id. at 1-2.  On October 10, 2017, petitioners filed a status report and additional documentation responsive to the undersigned's request for additional information.  The status report provided an explanation of petitioners' FedEx charges and copying charges by Perfect Imaging.  Pet. Status Rep. dated Oct. 10, 2017 (ECF No. 287) at 1-2.  The status report also included an additional claim for compensation for Ms. Ngoc Doan, Dr. Deisher's research assistant, but it did not provide requested information regarding how much time Ms. Doan spent preparing to testify at the hearing.  Id. at 3.  Petitioners provided an invoice for the services of Dr. Marcel Kinsborne, as well as receipts from FedEx and Perfect Imaging.  Id.

In summary, petitioners now request a total of $933,958.52 in attorneys' fees and costs.  Pet. App. at 2; Pet. Supp. App. at 2.  This matter is now ripe for adjudication on petitioners' motions for fees and costs.  For the reasons set forth below, **the undersigned awards petitioners $202,993.80 in attorneys' fees and $142,064.12 in attorneys' costs, for a total award of $345,057.92.**[6]

## I.      Discussion

Under the Vaccine Act, a special master shall award reasonable attorneys' fees and costs for any petition that results in an award of compensation.  42 U.S.C. § 300aa-15(e)(1).  When compensation is not awarded, the special master "may" award reasonable attorneys' fees and costs "if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought."  Id. at §15(e)(3).  Respondent has not objected to petitioners' application for fees and costs on the basis of a lack of good faith or reasonable basis.  The undersigned finds that petitioners brought their petition in good faith and with a reasonable basis, and therefore will award reasonable attorneys' fees and costs.

### a.  Reasonable Attorneys' Fees

The Federal Circuit has approved use of the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act.  Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343, 1349 (Fed. Cir. 2008).  Using the lodestar approach, a court first determines "an initial estimate of a reasonable attorneys' fee by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'"  Id. at 1347-58 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)).  Then, the court may make an upward or downward departure from the initial calculation of the fee award based on other specific findings.  Id. at 1348.

Counsel must submit fee requests that include contemporaneous and specific billing records indicating the service performed, the number of hours expended on the service, and the name of the person performing the service.  See Savin v. Sec'y of Health & Human Servs., 85 Fed. Cl. 313, 316-18 (Fed. Cl. 2008).  Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary."  Saxton v. Sec'y of Health & Human

---

[6] In total, the undersigned has awarded petitioners $663,327.23 in fees and costs for the prosecution of this case, $508,936.55 of which was attorneys' fees for petitioners' attorney, Mr. John McHugh.

Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)). It is "well within the special master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." Id. at 1522. Furthermore, the special master may reduce a fee request *sua sponte*, apart from objections raised by respondent and without providing the petitioner notice and opportunity to respond. See Sabella v. Sec'y of Health & Human Servs., 86 Fed. Cl. 201, 209 (Fed. Cl. 2009).

A special master need not engage in a line-by-line analysis of petitioner's fee application when reducing fees. Broekelschen v. Sec'y of Health & Human Servs., 102 Fed. Cl. 719, 729 (Fed. Cl. 2011). Special masters may rely on their experience with the Vaccine Act and its attorneys to determine the reasonable number of hours expended. Wasson, 24 Cl. Ct. 482, 484, (Fed. Cl. Nov. 19, 1991) rev'd on other grounds and aff'd in relevant part, 988 F.2d 131 (Fed. Cir. 1993). Just as "[t]rial courts routinely use their prior experience to reduce hourly rates and the number of hours claimed in attorney fee requests . . . [v]accine program special masters are also entitled to use their prior experience in reviewing fee applications." Saxton v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993).

### i. Hourly Rates

Petitioners request compensation for Mr. McHugh in the amount of $425.00[7] per hour for work performed in 2015, $430.00 per hour for work performed in 2016, and $435.00 per hour for work performed in 2017.[8] Pet. App. at 3; Pet. Supp. App. at 2. In support of this rate, Mr. McHugh states that he has 49 total years of litigation experience, 19 of which are in the Vaccine Program. Id. Mr. McHugh based his hourly rate increases on the Office of Special Masters' 2015-2017 Fee Schedules, which specify hourly rate ranges for attorneys based on the standards set forth in McCulloch v. Sec'y of Health & Human Servs., No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).[9]

In her previous decision on interim fees and costs in this case, the undersigned awarded Mr. McHugh $400.00 per hour for work he performed in 2014. [redacted], 2016 WL 720969. However, other special masters have awarded Mr. McHugh only $364.00 per hour for work performed in 2015. Bokmuller v. Sec'y of Health & Human Servs., 08-573V, 2016 WL

---

[7] Petitioners request different hourly rates for Mr. McHugh at different places in their application. Compare Pet. App. at 3 (reflecting petitioners' request that Mr. McHugh be compensated at $430.00 per hour for work performed in 2015) with Pet. App., Ex. 710 at 5 (reflecting that Mr. McHugh billed his time in 2015 at $425.00 per hour). For purposes of this decision, the undersigned refers to the numbers provided on Mr. McHugh's billing invoice, filed as Pet. Ex. 710.

[8] Counsel also requested paralegal rates for paralegal work performed by Mr. McHugh. All of the requested paralegal rates for 2015-2017 were within the Hourly Rate Fee Schedule, and no reductions were made to paralegal hourly rates.

[9] The 2015-2016 Hourly Rate Fee Schedule can be accessed at: www.uscfc.uscourts.gov/sites/.../Attorneys-Forum-Rate-Fee-Schedule2015-2016.pdf. The 2017 Fee Schedule can be accessed at:

http://www.cofc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule-2017.pdf.

7011357 (Fed. Cl. Spec. Mstr. Nov. 4, 2016), at *2.  Some special masters have awarded slightly higher rates to Mr. McHugh.  Mr. McHugh was awarded $400.00 per hour for work performed in 2015 and $415.00 per hour for work performed in 2016 in Hirmiz v. Secretary of Health & Human Servs., 06-371V, 2017 WL 4277433 (Fed. Cl. Spec. Mstr. Aug. 31, 2017) at *5; aff'd on this part and rev'd on other grounds, 2017 WL 6046985 (Fed. Cl. Nov. 22, 2017).  One special master has awarded Mr. McHugh $430.00 per hour for work performed in 2017.  Kottenstette v. Sec'y of Health & Human Servs., 15-1016V, 2017 WL 5662780 (Fed. Cl. Spec. Mstr. Oct. 30, 2017) at *4.

In consideration of a reasonable hourly rate for Mr. McHugh, the undersigned has carefully reviewed petitioners' application, including Mr. McHugh's time records for work he performed on the case.  Mr. McHugh's work and overall performance in this case does not demonstrate that he is entitled to the rates he has requested.  Given the excessive amount of time billed in this case,[10] counsel's missed deadlines,[11] and the general disorganization of the record as a whole, including petitioners' fee application, the undersigned finds it reasonable to adjust Mr. McHugh's requested hourly rates.  The undersigned awards Mr. McHugh $400.00 per hour for work performed in 2015 and $415.00 per hour for work performed in 2016-2017.  **This results in a reduction of $14,634.00 from Mr. McHugh's invoice.**

The following chart illustrates the reductions made to Mr. McHugh's attorney rates:

| Year | Requested Rate | Adjusted Rate | Hours Spent | Billed Amount | Adjusted Amount |
|------|---------------|--------------|-------------|---------------|-----------------|
| 2015 | $425.00 | $400.00 | 243.40 | $103,445.00 | $6,085.00 |
| 2016 | $430.00 | $415.00 | 504.60 | $216,978.00 | $7,569.00 |
| 2017 | $435.00 | $415.00 | 49.00 | $21,315.00 | $980.00 |
| | | | **TOTALS:** | $341,738.00 | $14,634.00 |

## ii.  Reduction of Billable Hours

While the undersigned agrees that petitioners are entitled to an award of attorneys' fees, a reduction in the number of hours billed by Mr. McHugh is appropriate for six reasons.  First, petitioners' counsel requests compensation for multiple hours of administrative work, including filing documents on CM/ECF, mailing letters, reviewing invoices, and scheduling phone calls.  Second, petitioner's counsel requests compensation for paralegal work that was billed at an experienced attorney's hourly rate.  Third, petitioners' counsel continued to bill time for attempting to gain access to the Vaccine Safety Datalink ("VSD"), despite the fact that two earlier motions for access to the VSD were denied.  Fourth, petitioners' counsel bills excessive time for travel.  Fifth, petitioners' counsel's time sheets are extremely vague and in many instances constitute block billing.  Finally, petitioners' counsel has failed to adequately explain how many of his billable hours are relevant, and in the undersigned's experience, the application as a whole is extraordinarily excessive.

---

[10] As explained in this decision, the undersigned finds much of the time billed by Mr. McHugh unnecessary, excessive, duplicative, and/or otherwise unreasonable.

[11] The docket reflects that between February 2015 to the present, counsel missed the following deadlines: October 19, 2015, December 15, 2015, and December 21, 2015.

For all of these reasons, each of which is explained in further detail below, the undersigned reduces the number of billable hours for which petitioners' counsel is entitled to compensation by 40 percent.[12]

## 1. Administrative Work

The undersigned finds it reasonable to reduce petitioners' fee award due to the excessive amount of administrative work billed by petitioners' counsel. Mr. McHugh billed more than 160[13] hours in 2015 – 2017, totaling over $56,000.00, for performing administrative tasks such as filing motions and other documents, reviewing invoices, setting up meetings, organizing exhibits, preparing notices of filing, ordering medical articles, downloading exhibits from the internet, and mailing CDs and other files.[14] Pet. App., Ex. 710 at 1-12. It is well established that billing for clerical and other secretarial work is not permitted in the Vaccine Program. Rochester v. United States, 18 Cl. Ct. 379, 387 (1989) (denying an award of fees for time billed by a secretary and finding that "[these] services … should be considered as normal overhead office costs included within the attorneys' fee rates"). Mr. McHugh has been previously warned that administrative time would not be compensated, and the undersigned reduces his fee application for administrative time. [redacted], 2016 WL 720969, at *5.

---

[12] In the undersigned's previous decision on interim fees and costs in this case, Mr. McHugh requested a total of $465,060.00 in fees, but the undersigned awarded him only $305,492.75, resulting in an approximately 39% cut. See [redacted], 2016 WL 720969. Mr. McHugh did not appeal that decision, nor did he file a motion for reconsideration. The present decision reduces Mr. McHugh's fees by only a slightly higher percentage, as the undersigned declines to increase his hourly rate.

[13] The over 160 hour total includes at least 65.7 hours of administrative time in 2015 and at least 49.1 hours of administrative time in 2016, in addition to 31.6 hours of administrative time billed as paralegal time for 2015-2016. Pet. Ex. 710.

[14] Mr. McHugh's billing records for both his attorney and paralegal time contain numerous entries for time that is best characterized as administrative in nature. Some administrative time was block billed along with other attorney or paralegal work. The following is a non-exhaustive list of entries in which Mr. McHugh billed at an attorney's hourly rate for performing administrative work: February 9, 2015; February 20, 2015; March 26, 2015; June 16, 2015; June 17, 2015; August 4, 2015; August 5, 2015; August 6, 2015; August 10, 2015; August 17, 2015; August 18, 2015; August 26, 2015; August 27, 2015; September 9, 2015; September 11, 2015; September 18, 2015; October 6, 2015; October 27, 2015; November 16, 2015; November 17, 2015; November 19, 2015; November 24, 2015; December 2, 2015; December 7, 2015; December 14, 2015; December 21, 2015; January 8, 2016; January 16, 2016;  January 19, 2016; January 20, 2016; February 8, 2016; February 10, 2016; February 19, 2016; February 23, 2016; February 25, 2016; March 2, 2016; March 31, 2016; April 14, 2016; May 4, 2016; August 1, 2016; March 16, 2017; April 4, 2017; April 11, 2017; June 1, 2017; June 7, 2017; September 22, 2017; and September 26, 2017. This list does not include paralegal time billed by Mr. McHugh which constituted administrative work.

## 2.  Paralegal Work

The undersigned also reduces petitioners' fee application due to the extensive amount of paralegal work performed by Mr. McHugh at an attorney's hourly rate.  For example, Mr. McHugh billed 8.7 hours of work on September 15-16, 2015, to prepare trial books, and he billed another 8.5 hours for the same work on September 21 and 23, 2015.  Pet. App., Ex. 710 at 3.  He also billed numerous hours for cross checking exhibits, ordering medical articles, preparing exhibit lists, and marking exhibits.  Id. at 4.  Although Mr. McHugh submitted a separate invoice for his paralegal time, the undersigned finds that his attorney invoice contained over 108 hours, a difference in nearly $33,000.00, for time that is best characterized as paralegal work.[15]  The undersigned previously warned Mr. McHugh that paralegal work must be billed at a rate appropriate for a paralegal.  [redacted], 2016 WL 720969, at *5.

Attorneys may be compensated for paralegal-level work, but at a rate that is comparable to what would be paid for a paralegal.  Doe/11 v. Sec'y of Health & Human Servs., No. XX-XXXV, 2010 WL 529425, at *9-10 (Fed. Cl. Spec. Mstr. Jan. 29, 2010) (citing Missouri v. Jenkins, 491 U.S. 274, 288 (1989)); Raymo v. Sec'y of Health & Human Servs., 11-654V, 2016 WL 7212323 (Fed. Cl. Spec. Mstr. July 15, 2016), mot. for rev. denied 129 Fed. Cl. 691 (2016); Davis v. Sec'y of Health & Human Servs., 15-159V, 2017 WL 877277 (Fed. Cl. Spec. Mstr. Feb. 7, 2017); Mulroy v. Sec'y of Health & Human Servs., 14-674V, 2017 WL 3378773 (Fed. Cl. Spec. Mstr. July 12, 2017); Rowan v. Sec'y of Health & Human Servs., 10-272V, 2014 WL 3375588 (Fed Cl. Spec. Mstr. June 19, 2014).  The undersigned thus reduces petitioners' fee application for paralegal work that was inappropriately billed at an attorney's hourly rate.

## 3.  Time Spent Working on Motions to Access the Vaccine Safety Datalink

The undersigned finds that petitioners' fee application should be further reduced due to the excessive time petitioners' counsel billed for working on additional motions to compel access to the Vaccine Safety Datalink ("VSD").  Mr. McHugh billed over 30 hours of time in 2015 related to preparing and filing a third motion for access to the VSD.[16]  Pet. App., Ex. 710 at 1-4.

Petitioners have made several attempts throughout the life of the case to access information in the VSD and information from other government sources.  Petitioners filed their motions to compel access to the VSD and motions to compel documents from other government

---

[15] The following is a non-exhaustive list of paralegal time billed by Mr. McHugh at an attorneys' hourly rate.  It should be noted that a number of these entries are vague and/or were block billed, so it is difficult to determine how much time Mr. McHugh spent on certain tasks.  Mr. McHugh performed paralegal work at an attorney's hourly rate on: September 16, 2015, September 17, 2015, September 18, 2015, September 21, 2015, September 23, 2015, September 28, 2015, December 4, 2015, December 6, 2015, January 12, 2016, January 13, 2016, January 15, 2016, January 18, 2016, January 25, 2016, January 26, 2016, January 27, 2016, January 28, 2016, February 22, 2016, February 24, 2016, and February 26, 2016.  Pet. App., Ex. 710 at 3, 4, 6, 7.

[16] These entries include but are not limited to those on the following dates: July 27, 2015, August 31, 2015, September 1, 2015, September 2, 2015, September 3, 2015, October 1, 2015, November 18, 2015.  Pet. App., Ex. 710 at 1-4.

sources on February 3, 2012 (ECF No. 46) and March 2, 2012 (ECF No. 50).  In an extensive and well-reasoned Order issued on June 12, 2013, then-presiding Chief Special Master Patricia Campbell-Smith denied petitioners' motions to compel access to the VSD.  [redacted] v. Sec'y of Health & Human Servs., No. 02-10V, 2013 WL 3368236 (Fed. Cl. Spec. Mstr. June 12, 2013).  Shortly thereafter, the case was transferred to Special Master George Hastings for further adjudication.  On July 12, 2013, petitioners filed a motion for reconsideration of Chief Special Master Campbell-Smith's Order, and Special Master Hastings denied petitioners' motion for reconsideration in a second well-reasoned and detailed order.  [redacted] v. Sec'y of Health & Human Servs., No. 02-10V, 2013 WL6038670 (Fed. Cl. Spec. Mstr. July 12, 2013).

Despite two extensive and detailed orders denying petitioners access to the VSD, petitioners filed a third motion to compel access to the VSD on October 1, 2015.  The undersigned denied this motion on August 30, 2016.  [redacted] v. Sec'y of Health & Human Servs., 02-10V, 2016 WL 5362878 (Fed. Cl. Spec. Mstr. Aug. 30, 2016).[17]  Given that the first two orders denying petitioners' motions to access VSD data were extensive, detailed, and well-reasoned, the undersigned finds that the over 30 hours billed by Mr. McHugh for preparing additional VSD motions, totaling over $12,000.00, is unreasonable.

#### 4.  Travel Time

The undersigned also finds it reasonable to reduce Mr. McHugh's fee award for the amount of time that he spent traveling back and forth from New York to Seattle, Washington.  Although Mr. McHugh did bill the time he spent traveling at one half of his hourly rate, Mr. McHugh billed at least 16 hours for traveling back and forth from New York, New York, to Seattle, Washington, to meet with Dr. Deisher.  Pet. App., Ex. 710 at 5.  This travel was unrelated to travel for the hearings held in March and May 2016.  Petitioners have not provided any explanation as to why it was necessary for Mr. McHugh to meet with Dr. Deisher in person, rather than speak to her over the phone.  Indeed, Mr. McHugh's billing invoice otherwise reflects that he spent a great deal of time speaking with Dr. Deisher over the phone.   The undersigned thus finds the time billed by Mr. McHugh for traveling to Seattle, Washington in December 2015 and January 2016, travel which was unrelated to the hearing, to be unreasonable.

#### 5.  Vague, Excessive, Irrelevant, and Block Billing

In addition to reducing petitioners' fee award for the time their counsel billed for administrative tasks, the undersigned also finds that petitioners' award should be reduced for vague, excessive, and occasionally irrelevant billing, as well as block billing.  Of the 886.8 total attorney and paralegal hours billed by Mr. McHugh between 2015-2017, the billing entries for more than 330 of these hours are vague and/or are block billed.[18]  For example, on September 3,

---

[17] On May 11, 2017, petitioners made a fourth attempt to renew their motion for access to the VSD during the rebuttal testimony for Dr. Deisher, which the undersigned denied from the bench.

[18] This 330 hours does not include any billing entries which were already reduced for another reason.  Many of Mr. McHugh's billing entries were vague or block billed in addition to containing other problems, such as charging for administrative work.  See generally Pet. App., Ex. 710.

2015, Mr. McHugh billed 4 hours for "[r]eview[ing] literature regarding Exhibit 419."[19]  Pet. App., Ex. 710 at 3.  No additional information was provided.  On December 8, 2015, Mr. McHugh's seven hour billing entry is noted "[c]ontinuation of working on exhibits. Motion to add another expert."  Id. at 5.  However, petitioners' counsel does not provide further details regarding the exhibits on which he worked, the work he was actually performing, or how the work was relevant to the case.  And on January 10 and 11, 2016, Mr. McHugh billed 9.8 and 9.5 hours respectively for "[c]ontinuation same as above---prepare for trial."  Id.  Petitioners did not provide any additional information regarding the work performed or the amount of time spent on each task.  Such billing entries are so vague that it is difficult to understand the actual work Mr. McHugh performed and how it was relevant to petitioners' case.  Petitioners have not provided information explaining why such vague billing entries are otherwise reasonable or necessary.

Many of Mr. McHugh's billing entries also illustrate that he spent an excessive amount of time performing both attorney and paralegal tasks.  For example, the billing records show that Mr. McHugh spent over 33 hours preparing a post-hearing memorandum.  Pet. App., Ex. 710 at 10.  Much of this time was block billed, and the description provided by Mr. McHugh regarding the work performed is so vague that the actual work he performed cannot be understood.  On August 31, 2015, Mr. McHugh billed two hours for drafting a status report and sending it to other attorneys in the omnibus.  Id. at 2.  Additionally, billing records for Mr. McHugh's paralegal time reflect that he spent excessive time organizing trial books.  Mr. McHugh billed over 42 hours of paralegal time for preparing exhibit books.  Pet. App., Ex. 710 at 11.  These 42 hours are also duplicative of the 21.4 attorney hours which Mr. McHugh billed for preparing trial books.  Id. at 3.  When taken as a whole, the undersigned finds these types of entries excessive and reduces petitioners' fee application for them.

Mr. McHugh also billed over 13 hours of time for tasks which appear irrelevant to petitioners' medical theory, including communicating with various doctors, including Dr. Leistiko, Dr. Mittra, Dr. Yoshi, Dr. Souayah, Dr. Krause, Dr. Goldstein, and Dr. Kinsborne.  Pet. App., Ex. 710 at 1-5.  None of these doctors testified during any of the hearing dates in the case, nor did they submit expert reports in the case.  Petitioners have not provided any explanation as to why it is reasonable for Mr. McHugh to bill time to speak to them about the case.

Taken as a whole, Mr. McHugh's billing entries were so vague that the undersigned could not understand much of the actual work that he performed and its relevance to the case.  It is difficult to determine whether the time spent by Mr. McHugh on the case is reasonable, given the amount of block billing, the excessive number of hours billed, and the overall vagueness of the application.  Mr. McHugh rarely specified or provided detail about the tasks he was performing.  It is well established that an application for fees and costs must sufficiently detail and explain the time billed so that a special master may determine, from the application and the case file, whether the amount requested is reasonable.  Bell v. Sec'y of Health & Human Servs., 18 Cl. Ct. 751, 760 (1989); Rodriguez, 06-559V, 2009 WL 2568468 (Fed. Cl. Spec. Mstr. July 27, 2009).  Petitioner bears the burden of documenting the fees and costs claimed.  Id. at *8.

Block billing, or billing large amounts of time without sufficient detail as to what tasks were performed, is clearly disfavored.  Broekelschen v. Sec'y of Health & Human Servs., 07-

---

[19] Petitioners' exhibit 419 is one of Dr. Deisher's publications, entitled "Sociological Environmental Causes are Insufficient to Explain Autism Changepoints of Incidence." 30 Issues in Law & Medicine 25 (2015).

137V, 2008 WL 5456319 (Fed. Cl. Spec. Mstr. Dec. 17, 2008) (reducing petitioner's attorneys' fees and criticizing her for block billing); see also Jeffries v. Sec'y of Health & Human Servs., 99-670V, 2006 WL 3903710 (Fed Cl. Spec. Mstr. Dec. 15, 2006); Plott v. Sec'y of Health & Human Servs., 99-670V, 2006 WL 3903710 (Fed. Cl. Spec. Mstr. Dec. 15, 2006).  Indeed, the Vaccine Program's Guidelines for Practice state, "Each task should have its own line entry indicating the amount of time spent on that task.  Several tasks lumped together with one time entry frustrates the court's ability to assess the reasonableness of the request."[20]  Moreover, the undersigned notes that Mr. McHugh was previously put on notice in his prior application for attorneys' fees and costs in this case that vague, excessive, and block billing was not permitted by the Vaccine Program.  [redacted], 2016 WL 720969.

Therefore, the undersigned finds it reasonable to reduce Mr. McHugh's attorneys' fee award for the over 330 hours, totaling nearly $127,000.00 for which the billing entries are vague, the time expended is excessive, the task appears irrelevant to petitioners' medical theory, and/or the billing entry constitutes block billing.

For all of these reasons, the undersigned finds it reasonable to **reduce Mr. McHugh's total fee application by 40 percent, or $130,841.60.**[21]

### b.  Costs

Petitioners request a total of $581,001.52 in attorneys' costs, including $225,866.78 to compensate petitioners' expert, Dr. Theresa Deisher; $282,625.00 for the work of Ms. Ngoc Doan, Dr. Deisher's research assistant; $32,758.96 for the expert services of Dr. Karin Burkhard, and $39,750.78 in other litigation costs.  Pet. App. at 2.

Like attorneys' fees, attorneys' costs must also be reasonable.  Sabella, 86 Fed. Cl. at 206.  After carefully considering petitioners' application and for the reasons discussed below, **the undersigned awards a total of $142,064.12 in costs.**

---

[20] Guidelines for Practice Under the National Vaccine Injury Compensation Program ("Guidelines for Practice") at 68 (revised January 7, 2016) found at http://www.uscfc.uscourts.gov/sites/default/files/GUIDELINES-FOR-PRACTICE-1-7-16.pdf (last visited on February 1, 2016) (Section X, Chapter 3, Part B(1)(b)).

[21] This 40% reduction was calculated after petitioners' hourly rates were adjusted.  It also includes a 40% reduction of Mr. McHugh's paralegal time.

Furthermore, the undersigned is aware that "percentage reductions [of fee awards] are subject to heightened scrutiny."  Raymo v. Sec'y of Health & Human Servs., 129 Fed. Cl. at 702 (citing Guerrero v. Sec'y of Health & Human Servs., 120 Fed. Cl. 474, 481-82 (2015) (quoting International Rectifier Corp. v. Samsung Electrics Co., 424 F.3d 1235, 1239 (Fed. Cir. 2005))).  In this case, the undersigned has provided a "concise but clear explanation as to why the fee reduction is justified."  Id. (internal citations omitted).

### i.  Costs for Expert Witnesses

"Fees for experts are subject to the same reasonableness standards as fees for attorneys." Baker v. Sec'y of Health & Human Servs., 99-653V, 2005 WL 589431, at *1 (Fed. Cl. Spec. Mstr. Feb. 24, 2005).  The Court is not responsible for notifying petitioner of any potential discounts due to inadequate information.  See Saunders v. Sec'y of Health & Human Servs., 26 Cl. Ct. 1221, 1226 (Cl. Ct. 1992).  Rather it is "counsel's responsibility to submit proof sufficient to support the point in issue."  Id.

### 1.  Theresa Deisher, Ph.D.

Petitioners request a total of $225,858.28[22] in expert costs to compensate Dr. Theresa Deisher for work she billed on the case between 2011-2017,[23] as well as her travel time and expenses.  Pet. App. at 2; Pet. App., Ex. 711 at 1.  Dr. Deisher billed 435.1 hours of work at $500.00 per hour[24] and 22 hours of travel time at $250.00 per hour.  Pet. App., Ex. 711 at 1.  Dr. Deisher also requests $2,816.78 for hotel and airfare expenses for her testimony in Washington, D.C., during the hearing in May 2016.  Id.  For the reasons discussed below, **the undersigned awards a total of $87,320.78 in costs for Dr. Deisher.**

### a.  Hourly rate

Dr. Deisher requests compensation for 435.1 hours of work at a rate of $500.00 per hour. In support of this hourly rate, petitioners described Dr. Deisher's previous work as a researcher at Genentech, Repligen, ZymoGenetics, Immunex, and Amgen Corporations.  Pet. App. at 15-16. Petitioners argue that "Dr. Deisher's claim for fees and expenses is well supported by her background as well as the depth and quality of her submission and testimony."  Id. at 2.

The Court has previously delineated a list of considerations to determine whether an expert's rate is reasonable.  Included among those items are the expert's experience with the Vaccine Program, the expert's publications, the clarity of the billing record, and the nature of the information provided.  Simon v. Sec'y of Health & Human Servs., 05-941V, 2008 WL 623833, at *3-5; Pelton v. Sec'y of Health & Human Servs., 14-674V, 2017 WL 338773 (Fed. Cl. Spec. Mstr. July 12, 2017).  An expert's rate has also been reduced if the expert is not a medical doctor.  Parker v. Sec'y of Health and Human Servs., 02-1553V, 2015 WL 4550111, at *4 (Fed.

---

[22] It appears that petitioners incorrectly calculated Dr. Deisher's invoice.  Petitioners requested $225,856.78 in costs for Dr. Deisher's work and her travel costs.  Pet. App. at 2; Pet. App., Ex. 711 at 1.  However, the undersigned calculated the total amount of her invoice at $225,866.78 (435.1 hours at $500.00 per hour, plus 22 hours of travel time at $250.00 per hour, plus travel costs of $2,816.78).  See Pet. App., Ex. 711.

[23] Dr. Deisher's invoice did not provide sub-totals for the amount of time she spent per year. Rather, her total hours were aggregated across 2011-2017.

[24] Petitioners request $217,550.00 to compensate Dr. Deisher for the work she performed on the case (435.1 hours multiplied by $500.00).  The additional $8,316.78 was billed for 22 hours of travel time billed at $250.00 per hour ($5500.00), and expenses related to travel for the hearing in Washington, D.C. Pet. App., Ex. 711 at 1.

Cl. Spec. Mstr. June 3, 2015) (in reducing a Ph.D. expert witness's invoice by one half, Special Master Hastings noted that he was "unaware of any case in the Vaccine Program in which a special master or judge has found a petitioner entitled to compensation recovery in a contested cause-in-fact claim based on the testimony of a non-medical doctor."). The undersigned has also previously reduced an expert's rate when the expert's testimony contradicts established medical science. Dingle v. Sec'y of Health & Human Servs., 08-579V, 2014 WL 630473 (Fed. Cl. Spec. Mstr. Jan 24, 2014).

In contemplating an appropriate hourly rate for Dr. Deisher,[25] the undersigned notes that she holds a Ph.D. in molecular and cellular physiology, and that her opinion in this case was not based upon V.J.M.'s medical records but rather upon her own research. Pet. Ex. 12 at 2. Indeed, petitioners state that "Dr. Deisher's work in this matter did not include review of medical records," but that "it involved scientific and statistical work." Pet. App. at 17. Moreover, apart from her work on the J.M. et al. Omnibus, Dr. Deisher is new to the Vaccine Program, and the undersigned is not aware that she has ever testified in any other Program cases. Although Dr. Deisher is a published author and petitioners filed three of her papers[26] in support of their medical theory in this case, these papers did not provide persuasive evidence of petitioners' theory of causation.[27] In addition, the papers and the experiments upon which they are based were shown by the respondent's experts to exhibit flawed methodology, and they contradict the most current epidemiology studies and other established medical science. Resp. Prehearing Brief dated February 8, 2016 (ECF No. 222) at 7. In addition, as will be explained below, Dr. Deisher's billing record is replete with entries which do not constitute billable time. The undersigned thus finds it reasonable to adjust Dr. Deisher's hourly rate.

Additionally, the undersigned finds that it is appropriate to reduce Dr. Deisher's hourly rate given her bias in the case. Other special masters have found it reasonable to reduce an expert's hourly rate when an expert's testimony presented "deep concerns about the potential for bias." Mooney v. Sec'y of Health & Human Servs., 05-266V, 2014 WL 7715158 (Fed. Cl. Spec. Mstr. Dec. 29, 2014). The undersigned noted in her August 31, 2017 Decision, "[Dr. Deisher's] moral opposition to the use of human cell lines and her business plan to develop alternative animal manufactured vaccines are *issues that raise grave concerns about her ability to present objective data and conclusions*, especially when she ignores the weight of the evidence presented by countless epidemiology studies which have been performed using much more rigorous

---

[25] In Fuesel v. Sec'y of Health & Human Servs., 02-95V, 2014 WL 13794241 (Fed. Cl. Spec. Mstr. March 19, 2014), one of 23 cases in the J.M. et al. Omnibus, Special Master Hastings contemplated whether petitioners were entitled to an award of interim fees. In their application, petitioners requested interim fees for Dr. Deisher. In denying an interim award for Dr. Deisher, Special Master Hastings noted that Dr. Deisher is not a medical doctor, that she had never testified in the Vaccine Program before, and that much of her work was subject to criticism by the scientific community.

[26] These papers were submitted as Pet. Exs. 265, 419, and 675.

[27] As the undersigned noted in her Decision, "Dr. Deisher's changepoint study, even if perfectly executed, cannot reveal an association between residual DNA in vaccines and autism." Decision dated August 31, 2017 (ECF No. 281) at 86.

methodology." Decision dated August 31, 2017 (ECF No. 281) at 88 (emphasis added).[28] Indeed, Dr. Deisher's testimony contradicted numerous other epidemiologic studies which were filed by both petitioners and respondent. Decision at 39-43; see also Resp. Exs. J9, J18, J26, J44; Pet. Ex. 304.

For all of these reasons, the undersigned finds Dr. Deisher's rate of $500.00 per hour unreasonable and instead compensates Dr. Deisher at a rate of $300.00 per hour for her work, resulting in an $89,220.00 decrease in petitioners' fee application.

The following chart illustrates the reduction applied to Dr. Deisher's hourly rate:

| Years | Requested Rate | Adjusted Rate | Hours Spent | Billed Amount | Adjusted Amount |
|---|---|---|---|---|---|
| 2011-17 | $500.00 | $300.00 | 435.1 | $217,550.00 | $87,020.00 |
| 2011-17 | *travel $250.00 | $150.00 | 22 | $5,500.00 | $2,200.00 |
| | | | TOTALS: | $223,050.00 | $89,220.00 |

### a. Reduction for Time Billed for Researching, Publishing, and Presenting Changepoint Study

In addition to adjusting Dr. Deisher's hourly rate, the undersigned also finds it reasonable to reduce Dr. Deisher's invoice for the time she billed related to the publication of her changepoint study. This includes time spent performing research on the changepoint study,[29]

---

[28] Dr. Deisher's bias against the use of human fetal cells to manufacture vaccines has been previously noted in different contexts. In denying funding for one of Dr. Deisher's proposed studies, researchers at the National Institutes of Health stated that her approach was "heavily biased, including an assessment of the current literature that fails to adequately consider the recent data that has rebuked the association between vaccination and autism." Decision at 87 (quoting Pet. Ex. 62 at 2).

[29] Dr. Deisher's invoice appears to reflect time billed not just for creating expert reports but also for performing general scientific research and working on her publications. Compare Pet. App., Ex. 711 at 2 (an entry dated October 25, 2011, reflects that Dr. Deisher billed time for drafting an expert report) with id. at 4 (multiple entries between December 2012 and April 2013 wherein Dr. Deisher billed time for "research" and drafting a manuscript to submit to the New England Journal of Medicine). The undersigned does not reduce Dr. Deisher's time spent drafting expert reports that were filed in the case; rather, she reduces Dr. Deisher's invoice for time that she spent in furtherance of her publications.

In the Vaccine Program, experts are awarded compensation for reviewing medical records and/or medical literature as well as drafting expert reports. See Loutos, 03-355V, 2015 WL 10986961 (Fed. Cl. Spec. Mstr. Dec. 18, 2015) (an expert with a Ph.D. was compensated for reviewing medical records but not for performing legal research). As will be discussed further, however, experts are not compensated for time billed in furtherance of publishing research. King v. Sec'y of Health & Human Servs., 03-584V, 2011 WL 5926126 (Fed. Cl. Spec. Mstr. Sept. 22, 2011);

time spent drafting the publications, and time spent presenting the research to other medical and legal professionals.

Dr. Deisher requests compensation for research apparently related to her changepoint study. Dr. Deisher has at least 16 billing entries,[30] totaling 47.5 hours, which are marked only as "research," and several of these entries constitute four or more hours of time. Pet. App., Ex. 711 at 3. Dr. Deisher also requests compensation for time spent attempting to publish her articles and presenting her papers to the "vaccine bar." Pet. App., Ex. 711 at 1. For example, on November 29, 2011, Dr. Deisher billed one hour of time to "discuss[] previous rejections of our manuscript and need to get published with [John McHugh] ad nauseum." Id. On December 1 and 5, 2012, she collectively billed 9 hours of time for "writing [New England Journal of Medicine] manuscript. Id. at 2. On March 22, 2016, Dr. Deisher billed three hours of time for taking and passing a "PHRP certification class for [a] clinical trial...," and on March 24, 2016, she billed over an hour of time for "edit[ing] IRB protocol…" Id. at 8. In addition, many of Dr. Deisher's time entries are so vague that it is difficult if not impossible for the undersigned to determine whether the work that she was performing was related to publishing her works, obtaining unrelated research grants, or actually working on the case. In total, Dr. Deisher billed at least 94 hours, $28,200.00 of her total invoice,[31] related to researching and publishing her articles and presenting her changepoint study to medical and legal professionals.

Other special masters have previously reduced an expert's invoice for time spent publishing or attempting to publish journal articles. King v. Sec'y of Health & Human Servs., 03-584V, 2011 WL 5926126 (Fed. Cl. Spec. Mstr. Sept. 22, 2011); Masias v. Sec'y of Health & Human Servs., 99-697V, 2009 WL 1838979 (Fed. Cl. Spec. Mstr. June 12, 2009); aff'd 634 F.3d 1283 (Fed. Cir. 2011). In King, one of the Omnibus Autism Proceeding ("OAP") test cases, Special Master Hastings declined to compensate petitioners' experts for time spent publishing a medical article. Id. at *7. Petitioners' experts requested over $440,000 in costs related to producing the article, "designing and carrying out data analysis," and writing the article. Id. Similar to the articles produced by Dr. Deisher in the J.M. et al. case, in King, Special Master Hastings stated that the "strongest factor" in the decision to deny funds for publishing articles was that "the [] article itself did not add any value to the petitioners' causation presentation in this case." Id. at *9. Moreover, Special Master Hastings noted that "[t]wo epidemiologic experts … testifying for respondent, testified … that the article was *deeply flawed.*" Id. (emphasis in original). The United States Supreme Court, and other federal courts, have also noted their skepticism of studies produced expressly for litigation purposes, reasoning that the potential for bias towards a favorable outcome for the plaintiff, whose lawyer pays for the study,

---

Masias c. Sec'y of Health & Human Servs., 99-697V, 2009 WL 1838979 (Fed. Cl. Spec. Mstr. June 12, 2009); aff'd 634 F.3d 1283 (Fed. Cir. 2011).

[30] These entries occur on the following dates: May 30, 2012, July 8-9, 2012, July 14-16, 2012, July 22, 2012, July 25-26, 2012, August 15, 2012, October 18, 2012, October 23, 2012, April 17-19, 2013, and April 21, 2013. Pet. App., Ex. 711 at 3.

[31] Ninety-four hours at a rate of $300.00 per hour equals $28,200.00. However, Dr. Deisher's invoice was based on a $500.00 per hour rate, and petitioners' application requests $47,000.00 for this work. See Pet. App., Ex. 711.

outweighs its probative value.  Id. at *8 (citing Exxon Shipping Co. v. Baker, 554 U.S. 471, 500, n. 17 (2008)).

Dr. Deisher's request for compensation for work related to publishing her research is strikingly similar to the situation in King.  Petitioners admit that they attempted to have Dr. Deisher's work published for purposes of the J.M. et al. omnibus litigation.  Tr. 227.[32]  Additionally, Dr. Deisher's changepoint study did not provide persuasive evidence of petitioners' medical theory, as the study was based on erroneous assumptions, incorrectly used data, flawed methodology, and contradicted the findings of numerous other epidemiological studies.  Decision at 76-89 (discussing the numerous problems with Dr. Deisher's changepoint research).

Even if the "research" billed by Dr. Deisher did not involve pursuing her publications and was spent on research for purposes of writing her expert reports, the undersigned finds that billing 47.5 hours for "research," on top of all the other time billed by Dr. Deisher, is unreasonable and excessive.  The Federal Circuit has previously upheld large cuts to the invoice of experts when they spent an excessive amount of time performing research and other work.  Riggins v. Sec'y of Health & Human Servs., 99-382V, 2009 WL 3319818 (Fed. Cl. Spec. Mstr. June 15, 2009), mot. for rev. denied, 106 Fed. Cl. 600 (withdrawn); aff'd, 406 Fed. Appx. 479 (Fed Cir. 2011) (reducing expert costs by 90% due to excessive billing by the expert).

For these reasons, the undersigned reduces petitioners' fee award for all of the time Dr. Deisher spent working on publishing her medical articles.  **The undersigned thus reduces Dr. Deisher's invoice for the 94 hours she spent researching and working to publish her changepoint study, a total of $28,200.00.**

### b.  Other Time Adjustments

In addition to reducing Dr. Deisher's invoice for time she spent performing research, the undersigned also finds it reasonable to reduce Dr. Deisher's award for administrative work, time billed for performing legal work, vagueness, and block billing.

### i.  Administrative Work

Dr. Deisher's invoice contains multiple entries for work that is not related to her expert testimony in this case and is more appropriately classified as administrative work, such as organizing files, moving exhibit boxes, shipping exhibits, labeling exhibits with exhibit numbers, and typing documents.  Dr. Deisher's invoice reflects that she billed at least 21 hours, totaling $10,500.00,[33] for administrative work.  For example, on November 14, 2013, Dr. Deisher block billed 11 hours for "recovering and retyping [a] document distorted and damaged by McHugh Law Office."  Pet. App., Ex. 711 at 2.  As discussed above, it is well established that attorneys cannot bill for administrative tasks, and this principle also extends to expert witnesses.  Loving v.

---

[32] Dr. Deisher testified that she spent a great deal of time pursuing publication of her articles, seeking peer review, and presenting her changepoint study to various medical professionals, all at the insistence of Mr. McHugh.  Tr. 227.

[33]  This figure is based on Dr. Deisher's requested hourly rate of $500.00 per hour.

Sec'y of Health & Human Servs., 10-469V, 2015 WL 10579257, at *12 (Fed. Cl. Spec. Mstr. Dec. 15, 2015).

### ii.   Irrelevant Billing Entries

In addition to billing time for administrative work, Dr. Deisher's invoice also contains entries that are otherwise irrelevant to petitioners' medical theory.  For example, Dr. Deisher billed time for gathering and reading through her testimony before the Minnesota legislature.  Id. at 1.  Her invoice further contains a billing entry for working on a grant application for Mr. McHugh to "NSF," which the undersigned presumes to be the National Science Foundation.  Id. at 4.  Dr. Deisher also billed time for presenting her papers and research to the "VIB," presumably, the Vaccine Injury Bar.  Id. at 3.  The undersigned has previously reduced Mr. McHugh's billing invoice in this case for billing time for matters unrelated to petitioners' theory of causation, such as participating in grand rounds, as she found them unreasonable.  [redacted], 2016 WL 720969, at *6.  Similarly, some of Dr. Deisher's billing entries are not relevant to petitioners' medical theory and are not reasonable or necessary to her expert opinions in this case, and the undersigned reduces Dr. Deisher's fee application for them.

### iii.   Billing for Legal Work and Research

The undersigned also reduces Dr. Deisher's billing invoice for time entries that are not related to her area of expertise.  Dr. Deisher billed time for consulting about the strategy of the case, practicing her responses, researching the Freedom of Information Act, working on a response to respondent's motion to dismiss, and reviewing the "flow" of testimony.  Pet. App., Ex. 710 at 1-3, 5, 6.  In total, Dr. Deisher billed over 30 hours for providing these additional services to petitioners' counsel, which are legal in nature and outside the scope of her scientific expertise.

Special masters have previously reduced an expert's billing invoice for providing services unrelated to their expertise.  Stone v. Sec'y of Health & Human Servs., 90-1041V, 2010 WL 3790297, at *8 (Fed. Cl. Spec. Mstr. Sept. 9, 2009) (reducing Dr. Kinsbourne's billing invoice for testifying outside of his expertise).  Former Chief Special Master Golkiewicz noted that an expert's hourly rate "is deserved only for those hours spent as an expert … [because] unrelated services provided to counsel, such as consulting and strategy, selection of experts, [and] trial tactics, while legitimate and even valuable services, are not the services of a medical expert and should not be compensated as such."  Simon v. Sec'y of Health & Human Servs., 05-941V, 2008 WL 623833, at *8 (Fed Cl. Spec. Mstr. Feb. 21, 2008).  The undersigned agrees with this assessment and finds that Dr. Deisher's billing record should be reduced for the legal services she provided, because they are outside her area of expertise.

### iv.   Vagueness and Block Billing

After carefully reviewing Dr. Deisher's billing invoice, and in addition to the entries described above, the undersigned also finds it reasonable to reduce Dr. Deisher's invoice for vagueness and block billing.  It is well established that an application for fees and costs must sufficiently detail and explain the time billed so that a special master may determine, from the application and the case file, whether the amount requested is reasonable.  Bell, 18 Cl. Ct. at 760. Petitioners bear the burden of documenting the costs claimed.  [redacted], 2016 WL 720969, at *8.  As Mr. McHugh is keenly aware, block billing, or billing large amounts of time without sufficient detail as to what tasks were performed, is disfavored, and the undersigned has

previously reduced his fee applications for block billing. Id. at *6. After the first motion for interim fees in this case, compensation for Dr. Deisher's contributions to this case was denied due to petitioners' failure to provide proper invoices. Petitioners were warned that should they wish to pursue expert expenses for Dr. Deisher in the future, "they should submit invoices that *clearly delineate the work performed …*, the amount of time spent, and the hourly rate charged." Id. at *15 (emphasis added).

Despite this clear warning, much of Dr. Deisher's invoice was block billed, and the billing entries are so vague that the undersigned cannot determine the actual work that she performed. For example, between November 20-25, 2013, Dr. Deisher billed a total of 13.5 hours of time for "finding ref[erences] for Mr. McHugh." Id. at 2. Many of Dr. Deisher's invoice entries are block billed and/or are so vague that the undersigned cannot understand the work performed or its necessity.

**For all these reasons, the undersigned reduces Dr. Deisher's total bill by an additional 20 percent, thus deducting an additional $21,126.00[34] from her invoice**.

### 2. Ms. Ngoc Doan

Petitioners request $282,625.00 for 1,127.5[35] hours of work billed at $250.00 per hour to compensate Ms. Ngoc Doan, Dr. Deisher's research associate. Pet. App. at 2; Pet. Ex. 712; Tr. 334. Petitioners submitted a timesheet for Ms. Doan that included block billed entries recorded on a monthly, rather than a daily, basis, along with a very brief, general description of research she performed. Pet. Ex. 712. For example, the timesheet reflects that Ms. Doan performed "vaccine manufacture research," "autism prevalence research," and that she assisted with "paper publication and writing." Id. at 2-3. **For the reasons discussed below, the undersigned awards a total of $3,750.00 in costs for Ms. Doan**.

Before embarking on an evaluation of a reasonable hourly rate for the work performed by Ms. Doan, the undersigned first evaluates the work performed by Ms. Doan, which can be categorized into three main areas: research, publishing, and trial testimony.

---

[34] By adjusting Dr. Deisher's hourly rate, the undersigned reduces petitioners' fee application by $89,220.00. Dr. Deisher's total request, less her travel expenses, was $223,050.00. $223,050.00 minus $89,220.00 equals $133,830.00, which represents the total award to Dr. Deisher after her hourly rates are adjusted. The 94 hours ($28,200.00) that she spent working on her publications was also reduced from her application, leaving $105,630.00. The undersigned further reduces Dr. Deisher's fee application by 20%, or $21,126.00, for the unreasonable time she billed in the case.

[35] Petitioners stated that "[a] half hour reduction was made for every item posted in an attempt to reflect actual hours worked," as Ms. Doan billed her time by the hour, rather than in 6 minute increments. Pet. Ex. 712 at 2. A total of 112.5 hours was reduced from Ms. Doan's timesheets as a result of this half hour reduction. Id. Petitioners did not provide further information regarding how Ms. Doan's timesheet was created or calculated.

###### a.  Compensation for Case Consulting vs. Research Assistants

Although somewhat unusual, special masters have previously reimbursed experts who act as "case consultants" or "research consultants."  Research consultants have been compensated in cases where the consultant holds a medical or professional degree and where the consultant had particularized knowledge of the Vaccine Program.  Densmore v. Sec'y of Health & Human Servs., 99-588V, 2006 WL 5668063 (Fed. Cl. Spec. Mstr. Aug. 14, 2006); King v. Sec'y of Health & Human Servs., 03-584V, 2010 WL 5470787 (Fed. Cl. Spec. Mstr. Dec. 13, 2010).  For example, Dr. Mark Geier was hired as a research consultant in a vaccine case for the limited purpose of reviewing and summarizing the medical literature filed in the case.  Densmore, 2006 WL 5660863, at *5.  Although the court did not find it unreasonable that Dr. Geier would be retained by counsel to perform basic consulting research for the case, the court noted that he "should not be reimbursed at an expert's hourly rate," as he did not perform the work of an expert in the case.  Id.; accord Schrum v. Sec'y of Health & Human Servs., 2007 WL 1772056 (Fed. Cl. Spec. Mstr. May 31, 2007).  In deciding to compensate Dr. Geier for his consultation work, the Court also noted that he was "very familiar" with the Vaccine Program.  In Densmore, the Court awarded Dr. Geier $175.00 per hour for 13.75 hours of work reviewing medical articles.  2006 WL 5660863, at *6; accord Schrum, 2007 WL 1772056.

Although consultants have been compensated under limited factual circumstances, many special masters have found it unreasonable to compensate research assistants when they were unqualified as experts or their work did not add any probative value to the case.  See King, 2010 WL 5470787; Riggins v. Sec'y of Health & Human Servs., 99-382V, 2009 WL 3319818 (Fed. Cl. Spec. Mstr. June 15, 2009).  For example, in both the King and Riggins cases, petitioners requested reimbursement for work performed by David Geier, the research assistant and son of Dr. Mark Geier.  In denying all fees for Mr. Geier, Special Master Hastings explained that Mr. Geier billed time for "research, technical, and logistical support" to Dr. Geier regarding his publication of an epidemiology study based on information contained in the Vaccine Safety Datalink ("VSD").  King, 2010 WL 5470787, at *19.  Special Master Hastings stated that Mr. Geier's work as a research assistant was not compensable because the work did not require an advanced or professional degree and that, indeed, Mr. Geier held only a Bachelor of Arts degree in Biology.  Id.  Additionally, although Mr. Geier had enrolled in some graduate level coursework, he had not completed his degree.  Riggins, 2009 WL 3319818, at *7.  Mr. Geier's billing records were also found to be deficient in that they were duplicative of work performed by Dr. Geier.  King, 2010 WL 5470787, at *20.

The undersigned finds the nature of Ms. Doan's work in this case to closely resemble the work performed by David Geier in previous Program cases, and her work is better characterized as that of a research assistant, rather than a case consultant.  Like Mr. Geier, Ms. Doan does not hold a higher level degree; rather, she has a Bachelor's degree in General Science.  Although she has completed some graduate work, she did not have a Master's degree during the pendency of this case.  And although she was called to testify during the hearing about inputting data into the software program used in Dr. Deisher's changepoint study, she was not offered as an expert in any area.

Additionally, just as Mr. Geier provided "research, technical, and logistical" support to Dr. Geier in King, Ms. Doan testified that she performed data collection and data analyses for Dr. Deisher's changepoint research.  Tr. 335-36.  According to her testimony, Ms. Doan did not

review any of V.J.M.'s medical records, nor did she review any of the medical articles filed in the case or draft any expert reports. Indeed, her billing records reflect that Ms. Doan spent a great deal of time researching "autism prevalence," "vaccine compliance," "paternal age," "PRDM9/hotspot[s]," and "genome research." Pet. App., Ex. 712 at 1-2. Her billing invoice also dedicates numerous hours to "paper publication and writing," though she testified that she was not involved in the writing of Dr. Deisher's papers. Tr. 345. This work is very similar in nature to the work performed by David Geier, which was denied in full. The undersigned agrees with the reasoning set forth in King, Riggins, and Densmore, and thus denies compensation for the research performed by Ms. Doan.[36]

### b. Compensation for Researching and/or Publishing Medical Studies

Another reason to reduce petitioners' fee application for the work billed by Ms. Doan is because compensation for researching and/or publishing medical studies is generally not compensable in the Vaccine Program or in other federal jurisdictions. It is important to note that neither experts, consultants, nor research associates have ever been compensated in the Vaccine Program when their billable time was spent performing research on a medical article for publication in a case. Special masters have been skeptical of the utility of such studies produced for purposes of vaccine litigation and have declined to reimburse petitioners for the production of these types of studies. King, 2010 WL 5470787, at *7; accord Jeffries v. Sec'y of Health & Human Servs., 99-670V, 2006 WL 3903710, at *13-14 (Fed. Cl. Spec. Mstr. Dec. 15, 2006); Sabella v. Sec'y of Health & Human Servs., 02-1627V, 2008 WL 4426040, at *30-32 (Fed. Cl. Sepc. Mstr. Aug. 29, 2008), aff'd in part on this point and rev'd in part on other point, 86 Fed. Cl. 201, 218-19 (2009); Masias v. Sec'y of Health & Human Servs., 99-687V, 2009 WL 1838979, at *39-41 (Fed. CL. Spec. Mstr. June 12, 2009), aff'd, 643 F.3d 1283 (Fed. Cir. 2011).

Moreover, the United States Supreme Court, along with many other federal courts, are also skeptical of medical studies that are produced expressly for purposes of litigation. See, e.g., Exxon Shipping Co. v. Baker, 554 U.S. at 500, n.17; Daubert v. Merrell Dow Pharmaceuticals, Inc., 43 F.3d 1311, 1317 (9th Cir. 1995); Nelson v. American Home Products Corp., 92 F. Supp. 2d 954, 967-68 (W.D. Mo. 2000); Nelson v. Tennessee Gas Pipeline Co., 243 F.3d 244 (6th Cir. 2001); Lauzon v. Senco Products, 270 F.3d 681, 692 (8th Cir. 2001); Mike's Train House, Inc. v. Lionel, LLC, 472 F.3d 398, 408 (6th Cir. 2007); Johnson v. Manitowoc Boom Trucks, Inc., 484 F.3d 426, 434-35 (6th Cir. 2007).

Based on Ms. Doan and Dr. Deisher's testimony during the hearing on March 8, 2016, as well as petitioners' fee application, it appears that the majority of Ms. Doan's time in this case, including the time she billed for travel, was billed for research and other work on Dr. Deisher's studies and publications. As previously explained, the undersigned and other special masters have found it unreasonable to compensate experts for time spent performing research in their field and/or time spent working on their publications, specifically when those publications are being produced for purposes of litigation. King, 2011 WL 5926126; Masias, 2009 WL 1838979; Exxon Shipping Co. v. Baker, 554 U.S. at 550, n. 17 (noting the Court's skepticism of medical studies produced for litigation purposes). Even assuming, *arguendo*, that the work Ms. Doan performed in researching and assisting in the publication of Dr. Deisher's studies is relevant to

---

[36] Similarly, as discussed above, compensation was also denied for the time that Dr. Deisher spent on research unrelated to drafting her expert reports in the case.

petitioners' theory of causation, the studies were found to be scientifically deficient and their results invalid. Decision dated August 31, 2017 at 85-86. Moreover, the causal interpretations of the study, used to support petitioners' medical theory under <u>Althen</u> Prong One, were found implausible. Thus, the undersigned will not compensate Ms. Doan for this time.

### c. Compensation for Ms. Doan's Trial Testimony

Although the undersigned finds that the time Ms. Doan billed for her work as a research assistant is not compensable, the undersigned finds it reasonable to compensate Ms. Doan for the time she spent preparing to testify, testifying during the hearing, and attending the hearing. To this end, petitioners' application states that Ms. Doan billed 16 hours for "Seattle court testimony time." Pet. App., Ex. 711 at 1. On September 25, 2017, petitioners were ordered to provide additional information regarding Ms. Doan's trial testimony. The undersigned asked petitioners to provide "an invoice for Ms. Ngoc Doan which clearly states the amount of time Ms. Doan spent preparing to testify, traveling to, and attending the hearing in Seattle, Washington, on March 7-8, 2016." Order dated Sept. 25, 2017 (ECF No. 285). Although petitioners filed a response to the Order, they did not provide the requested information regarding Ms. Doan's hearing preparation. Instead, petitioners provided additional information about Grand Rounds in which Ms. Doan participated with Dr. Deisher in 2013.[37] As a result, it is not clear how much time Ms. Doan spent preparing to testify in the case.

Ms. Doan was present during the entirety of the hearing on March 7-8, 2016, in Seattle, Washington.[38] The hearing began at 9:00AM on March 7, 2016, and concluded at 4:45PM that day. Tr. 1, 192. On March 8, 2016, the hearing began at 9:00AM and concluded at 3:00PM. <u>Id.</u> at 194, 351. The undersigned will compensate Ms. Doan for all the hours that she spent traveling, attending, and testifying[39] during the hearing as well as the time she spent preparing for the hearing, which the undersigned estimates as a total of 30 hours.[40]

### d. Hourly Rate

Ms. Doan requests reimbursement for 1,127.5 hours of work at $250.00 per hour, as well as six hours of travel time billed at $125.00 per hour, for a total of $282,625.00. Pet. App. at 2; Pet. Ex. 712. As discussed above, the undersigned will compensate Ms. Doan for 30 hours of work spent preparing for and attending the hearing in Seattle, Washington, and the remainder of

---

[37] Compensation for these types of billing entries has been previously denied, as it was found to be irrelevant to the theory of causation in this case. [redacted], 2016 WL 720969, at *6.

[38] Ms. Doan did not attend the hearings in Washington, D.C. on March 10-11, 2016, or May 6, 2016.

[39] Ms. Doan's testimony lasted approximately one hour on March 8, 2016. <u>See</u> Tr. 334-346.

[40] Petitioners' application states that Ms. Doan billed a total of 16 hours for testifying and attending the hearing in Seattle, Washington, on March 7-8, 2016. Pet. App., Ex. 711 at 1. However, in an effort to ensure that Ms. Doan is compensated for all the time she spent preparing for her testimony, in addition to her presence at trial, the undersigned will compensate her for 30 hours of work.

her request is denied.  Therefore, it is necessary to determine a reasonable hourly rate for Ms. Doan.

In support of her hourly rate request of $250.00, petitioners state that Ms. Doan graduated from Seattle University with a Bachelor of Science in General Science.[41]  Petitioners summarized her general lab skills, which include handling lab mice and working with various imaging and data visualization software, including the R software program.  Pet. App. at 11-12. Petitioners also summarized several autism research projects on which Ms. Doan has worked over the last several years.  Pet. App. at 12-14.

Ms. Doan's testimony during the hearing consisted of describing how she performed online searches for autism prevalence data, copied and pasted prevalence data into Microsoft Excel, and then analyzed the prevalence data.  Tr. 335-36.  She further testified that she consulted with Dr. Deisher in order to validate the data and results of the analysis.  Id. at 337. Notably, during her testimony, petitioners did not offer her as an expert in any particular subject. See Tr. 334-346.

As discussed above, in considering a reasonable hourly rate for an expert, special masters have previously assessed an expert's qualifications, an expert's experience with the Vaccine Program, an expert's publications, the clarity of the billing records, the nature of the information provided by an expert, and whether an expert's testimony contradicts established medical science.  Simon, 2008 WL 623833, at *3-5; Parker, 2015 WL 4550111, at *4; Dingle, 2014 WL 630473, at *8.  The undersigned is not aware that Ms. Doan has any previous experience in the Vaccine Program.  Moreover, Ms. Doan's billing records do not appear contemporaneous, as they were block billed on a sometimes monthly basis.  In light of these factors, the undersigned finds Ms. Doan's requested rate of $250.00 per hour to be unreasonable.

With regard to her publications and their reliability, Ms. Doan has worked on several research projects regarding autism which are available on Sound Choice Pharmaceutical's and INSAR's[42] websites.  See, e.g., Pet. App. at 12-14.  She also served as a contributing author to two of Dr. Deisher's publications which were filed in this case.  See Pet. Exs. 265, 675. However, Ms. Doan testified during the hearing that while she collected the data used in these publications, she did not take part in writing the papers.  Tr. 345.  Rather, her role was editing and reading the papers.  Id.  Furthermore, as explained in the undersigned's August 31, 2017 Decision, these studies and the conclusions they draw, although published, were predicated upon

---

[41] Although petitioners' fee application stated that Ms. Doan holds a Bachelor of Arts degree in Biology from Washington University, this appears to be incorrect, as Ms. Doan testified that she holds a Bachelor of Science degree in General Science from Seattle University.  Compare Pet. App. at 11 with Tr. 341.  Furthermore, the undersigned also notes that Ms. Doan is currently enrolled in, but has not yet completed, a Master's degree in Biotechnology at Johns Hopkins. Ms. Doan began this program in 2014 and is a part-time, online student.  Tr. 342.

[42] INSAR is the International Society for Autism Research, "a scientific and professional organization devoted to advancing knowledge about autism spectrum disorders."  INSAR holds an annual meeting and maintains an online journal called "Autism Research!"  INSAR, <http://www.autism-insar.org/> (last visited December 6, 2017).  Ms. Doan's work is available on INSAR's website in an index of article submissions for an annual meeting.

flawed assumptions about autism prevalence and contained flawed study designs.  Decision dated August 31, 2017 at 37.  As a result, the published studies were found unreliable, and the undersigned noted that "the graphs do not accurately portray the data, calling into question the accuracy of the change points."  Id. at 37-38.

For all of these reasons, the undersigned finds a reasonable hourly rate for Ms. Doan's work is $125.00 per hour.  The undersigned does not award an hourly rate for travel time for Ms. Doan, as her invoice reflects that the six hours of travel she billed were not related to petitioners' case.[43]  The undersigned thus compensates Ms. Doan for 30 hours of work at a rate of $125.00 per hour, for a total of $3,750.  **This results in a reduction of $278,875.00 from petitioners' fee application.**

### 3.  Karin Burkhard, M.D.

Petitioners request a total of $32,758.96 to compensate Dr. Karin Burkhard for her work on the case as well as reimburse her for her travel expenses.  Pet. App., Ex. 713 at 1-2.  Dr. Burkhard billed 54 hours of work at $500.00 per hour, 34 hours of travel time at $100.00 per hour, and requests compensation for travel expenses in the amount of $2,358.96.  **For the reasons discussed below, the undersigned awards a total of $19,848.56 to Dr. Burkhard.**

### a.  Hourly Rates

Dr. Burkhard requests compensation in the amount of $500.00 per hour for 54 hours of work performed on the case, for a total of $27,000.00.  Pet. App., Ex. 713 at 1.  In support of this hourly rate, petitioners stated that Dr. Burkhard has been a practicing psychiatrist in Long Island, New York, for the last 25 years.  Pet. App. at 14.  Petitioners further stated that "[f]rom her experience and the quality of her testimony and research it is submitted that her request for fees is also well justified."  Id. at 15.  However, the undersigned finds Dr. Burkhard's rate of $500.00 per hour unreasonable due to the poor quality of her testimony and the fact that much of her testimony was, by her own admission, outside her area of expertise.

As the undersigned stated in her August 31, 2017 Decision in this case:

> Dr. Burkhard has no training in the field of immunology or infectious disease. She did not review the expert reports of Dr. Halsey, Dr. Fallin, or Dr. Arking. Her understanding of genetics appeared to be limited, and with regard to questions in medical articles by Iossifov (Pet. Ex. 641), she deferred to a scientist with knowledge in the field.

Decision dated August 29, 2017 at 71, n. 189.  Further, the undersigned did not find Dr. Burkhard's testimony regarding PANDAS to be persuasive, nor did she find that the DTI studies to which Dr. Burkhard devoted a substantial portion of her testimony provided any support for petitioners' medical theories.  Id. at 92.  Further, Dr. Burkhard's testimony regarding the DTI

---

[43]  Ms. Doan billed a total of six hours for "travel time to OHSU."  Pet. App., Ex. 711 at 1. Petitioners did not further elaborate on the purpose of the travel.  As it appears that this travel was not related to purpose of the hearing in Seattle, Washington, or Washington, D.C., the undersigned finds it unreasonable and will not compensate Ms. Doan for it.

studies actually ignored the authors' plainly stated caveat that autism studies should be interpreted with caution. Id. at 92-93.

Thus, the undersigned will compensate Dr. Burkhard at a rate of $300.00 per hour for the 54 hours of work she performed in this case. **This results in a $10,800.00 reduction to Dr. Burkhard's invoice.**

The following chart illustrates the reductions made to Dr. Burkhard's hourly rate:

| Years | Requested Rate | Adjusted Rate | Hours Spent | Billed Amount | Adjusted Amount |
|-------|------|------|------|------|------|
| 2015-16 | $500.00 | $300.00 | 54 | $27,000.00 | $16,200.00 |

### b. Travel and Cost Adjustments

The undersigned also finds it reasonable to adjust Dr. Burkhard's invoice for excessive travel costs. Dr. Burkhard requests reimbursement for 34 hours of travel time billed at a rate of $100.00 per hour, for a total of $3,400.00. Pet. App., Ex. 713 at 1. She also requests reimbursement of expenses related to traveling. Id. at 2. While the undersigned finds Dr. Burkhard's travel rate of $100.00 per hour reasonable, she reduces Dr. Burkhard's invoice for the excessive time she spent traveling and the excessive travel costs she billed to the Program.

Dr. Burkhard billed a total of 16 hours of travel time on October 3, 2015, October 5, 2015, and February 5, 2016. Pet. App., Ex. 713 at 1. These dates of travel were not related to the hearing in this matter, which took place in March 2016 and May 2016. Petitioners did not provide any explanation as to why it is reasonable for Dr. Burkhard to bill the Program for travel that is not related to the hearing in this case. Although unclear from Dr. Burkhard's invoice, it appears that this travel was related to a meeting with Mr. McHugh, but petitioners failed to explain why it was necessary for Dr. Burkhard to meet with Mr. McHugh in person. Indeed, Mr. McHugh's billing records reflect that he had several phone conferences with Dr. Burkhard throughout 2015 and 2016. **Thus, the undersigned reduces Dr. Burkhard's invoice for the $1,600.00 she billed for travel unrelated to the hearing.**

Dr. Burkhard also billed a total of $418.40 for a "[c]onf[erence] with Dr. Deisher; Phila [sic] PA," on October 3, 2015. She billed $50.00 for "miscellaneous costs," on October 15, 2015, and $42.00 for "Transport" related to a meeting with Mr. McHugh on February 15, 2016. Dr. Burkhard's invoice did not include receipts for any of these costs, nor did petitioners provide an explanation as to why it is reasonable for Dr. Burkhard to bill the Program for travel costs that are not related to the hearing in this case. The undersigned finds these costs unreasonable and **reduces Dr. Burkhard's invoice by $510.40 for them.**

### ii. Other Costs

Petitioners request $39,750.78 in attorneys' costs for expenses incurred between January 2015 and October 17, 2016. These costs include Mr. McHugh's travel to Seattle, Washington, presumably to meet with Dr. Deisher, copying, postage, and FedEx expenses, meals, office supplies, medical articles, travel insurance, and parking. The undersigned finds some of these

23

costs unreasonable, unnecessary, and/or irrelevant to the case. **For the reasons set forth below, the undersigned awards $31,144.78 in non-expert related costs**.

### 1.   Reduction for Travel Costs

Mr. McHugh requests reimbursement for multiple trips to Seattle, Washington, during 2015 and 2016. The undersigned will pay all of Mr. McHugh's travel expenses related to the hearings on March 7-8, 2016, and May 6, 2016. However, Mr. McHugh requests $2,513.94 in costs related to a trip to Seattle, Washington, in July 2015. Pet. App., Ex. 5 at 1, 10. This request includes costs for travel insurance, airfare, rental car, accommodations, and meals.

Mr. McHugh also requests reimbursement in the amount of $791.30 for airfare charges incurred in September 2015 on both Alaska and JetBlue airlines. Pet. App., Ex. 5 at 1, 19, 21. Mr. McHugh did not explain what these charges were for, and he provided only a credit card statement showing that they were incurred. Similarly, Mr. McHugh requests reimbursement for $795.77 for a meal at Capital Grill and a hotel room in New York City on October 5-6, 2015. Id. at 1, 22-23.

Petitioners request $3,503.42 in reimbursement for Mr. McHugh's travel expenses in December and January 2016,[44] including two round trip flights to Seattle, in-flight entertainment, meal, and/or beverage charges, a hotel room for seven total nights, rental cars, and parking. Pet. App., Ex. 6 at 10-15. Petitioners did not explain why it was necessary for Mr. McHugh to travel to Seattle on either of these dates.

Petitioners request a total of $206.00, charged in four separate increments, for "Barclay Street Parking" in New York, New York, during the month of January 2016. Pet. App., Ex. 5 at 2; Ex. 6 at 10, 15. Petitioners further request a total of $255.00 for "Barclay Street Parking New York," for what is presumed to be parking charges between May 4-22, 2016. Pet. App., Ex. 5 at 4; Ex. 7 at 22. It is not clear why Mr. McHugh is billing the Vaccine Program for parking charges incurred in New York City, where his office is located, and petitioners did not provide any explanation for these charges.

As explained above, the undersigned finds all of these travel costs unreasonable, as Mr. McHugh has not provided an explanation as to why they are necessary. From the billing invoices, it also appears that Dr. Deisher was taking trips to New York to meet with Mr. McHugh, but no explanation as to the reasonableness or necessity of these in person meetings was provided. Given that Mr. McHugh billed multiple hours of time for phone conferences with Dr. Deisher, the undersigned finds these costs unreasonable and **reduces petitioners' award by $8,065.43 for them.**

### 2.   Reduction for Office Supplies

Mr. McHugh requests reimbursement for a total of $173.38, incurred on December 15, 2015, March 6, 2016, and April 21, 2016, for Post-it notes, writing tablets, pens, and other office

---

[44] Based on the hotel invoices, it appears that Mr. McHugh traveled to Seattle from December 16-19, 2015, and January 3-7, 2016. See Pet. App., Ex. 6 at 11, 16.

supplies.  Pet. App., Ex. 5 at 1-2; Ex. 6 at 7.  These costs are best described as general office overhead, and the undersigned will not reimburse them.

### 3.   Reduction for Meals

Petitioners request $361.95 in reimbursement for a meal at Ruth's Chris Steak House in Seattle, Washington, on March 6, 2016.  Petitioners provided a credit card billing invoice showing that $361.95 was charged, but they did not provide a receipt.  Pet. App., Exhibit 7 at 5.

Similarly, petitioners request a total of $193.70 for a meal at Cheesecake Factory Seattle on March 7, 2016.  Petitioners provided a credit card billing invoice reflecting the charge but did not provide a receipt.  Pet. App., Ex. 7 at 5.  Without a receipt, the undersigned finds these charges excessive and will reduce them by half, **resulting in a reduction to petitioners' application in the amount of $277.83.**

### 4.   Other Reductions

Petitioners request reimbursement in the amount of $200.00 for "Wayne Rhode – Research Check," and petitioners provided a copy of a check written to Mr. Rhode in this amount.  However, the undersigned finds this cost unreasonable, as petitioners did not specify who Mr. Rhode is, what is he was researching, and how it was relevant to the determination of causation in the case.

Mr. McHugh requests reimbursement in the amount of $40.96 for "Amazon.com," and provided a credit card statement stating that this amount was charged for Amazon Marketplace.  Pet. App., Ex. 5 at 2; Ex. 6 at 10.  Petitioners did not explain why this charge is reasonable, necessary, or relevant to the case.

Mr. McHugh requests reimbursement in the amount of $21.78 for "QFC."  Pet. App., Ex. 5 at 2.  Petitioners did not explain what QFC is or why this charge was incurred.  A receipt for the charge was not provided; rather only a credit card statement was produced showing that the charge was incurred.  Pet. App., Ex. 6 at 17.  **The above reductions result in a $262.74 decrease to petitioners' application.**

### II.   Conclusion

For the reasons set forth above, the undersigned finds that petitioners are entitled to an award of attorneys' fees and costs.  The amount of the award is computed as follows:

**Total Fees and Costs Requested:**              **$933,958.52**

**Attorneys' Fees:**

| | |
|---|---|
| Total Requested: | $341,738.00 |
| Hourly Rate Adjustment: | ($14,634.00) |
| 40 % Reduction: | ($130,841.60) |
| Total Awarded: | $196,262.40 |

**Paralegal Fees**:

| | |
|---|---|
| Total Requested: | $11,219.00 |
| Hourly Rate Adjustment: | ($0.00) |
| 40% Reduction: | ($4,487.60) |
| Total Awarded: | $6,731.40 |

**Total Attorneys' and Paralegal Fees Awarded:**       **$202,993.80**

**Costs**:

| | |
|---|---|
| Total Requested | $581,001.52 |

**Dr. Theresa Deisher:**              $225,866.78

| | |
|---|---|
| Travel Expenses Requested: | $2,816.78 |
| Expert Fees Requested: | $223,050.00 |
| Hourly Rate Adjustment: | ($89,220.00) |
| Research Adjustment: | ($28,200.00) |
| 20 % Reduction: | ($21,126.00) |
| Total Award for Dr. Deisher | **$87,320.78** |

**Ms. Ngoc Doan:**              $282,625.00

| | |
|---|---|
| Research and Hourly Rate Adjustments: | ($278,875.00) |
| Awarded: | **$3,750.00** |

**Dr. Karin Burkhard:**              $32,758.96

| | |
|---|---|
| Hourly Rate Adjustment: | ($10,800.00) |
| Travel Reduction: | ($2,110.40) |
| Awarded: | **$19,848.56** |

**Other Costs**

| | |
|---|---|
| Requested | $39,750.78 |
| Reduction for travel: | ($8,065.43) |
| Reduction for meals: | ($277.83) |
| Reduction for Wayne Rhode: | ($200.00) |
| Reduction for Amazon: | ($40.96) |
| Reduction for QFC: | ($21.78) |
| Awarded: | **$31,144.78** |

**Total Costs Awarded:**              **$142,064.12**

**Accordingly, the court awards $345,057.92, in the form of a check payable jointly to petitioners and petitioners' attorney, Mr. John McHugh.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of court shall enter judgment in accordance herewith.[45]

**IT IS SO ORDERED.**

<u>s/Nora Beth Dorsey</u>
Nora Beth Dorsey
Chief Special Master

---

[45] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party, either separately or jointly, filing a notice renouncing the right to seek review.